## 33019. ORKIN EXTERMINATING COMPANY, INC. v. MARTIN COMPANY et al.

UNDERCOFLER, Presiding Justice.

Orkin appeals the denial of injunction and grant of summary judgment to the Martin Company and Ken Conners, its president, on a five-count complaint seeking damages and future restraint for a "persistent, calculated, wilful and systematic attempt to induce employees of Orkin to break their contracts with Orkin, leave the employ of plaintiff, and to take employment with the defendant." Orkin sought general and exemplary damages of $1,250,000 and $25,000 in attorney fees. Appellee responded by admitting solicitation of Orkin's employees while they were known to be employed there; admitted Ken Conners contacted several employees while they were working in their offices during office hours, and admits receiving a demand

from Orkin's counsel to cease these activities. However, the Martin Company denied Orkin has suffered any compensable loss, asserting that Orkin's contracts were terminable at will and that fair competition for employees between competitors was privileged where companies compete in the marketplace, no malicious intent directed at Orkin is present, and the employees solicited are put to work by the competing company.

Following extensive discovery and a hearing on motions for injunction and summary judgment, the trial court reviewed a voluminous record and arrived at the following findings of fact: Martin Company was founded in 1972 as a holding company for the purpose of acquiring and operating small independent pest control companies. Although it was originally conceived that the company would retain as employees those persons who had managed the acquired company before purchase, this plan seldom worked and Martin frequently needed management and other personnel to operate its subsidiaries. The founders of Martin Company had been employed by either Orkin Exterminating Company or its parent company, Rollins, Inc. Martin's first president, Paul Bowes, had been executive vice-president of Orkin immediately prior to joining Martin, had been with Orkin for 22 years and knew most of its management personnel. Kenneth Conners, Martin's current president, and a co-defendant, was employed by Orkin for years in a management capacity, prior to his leaving to start his own business, and had an extensive acquaintance among Orkin managers. Both men tended to look first to Orkin personnel with whom they were familiar when management vacancies appeared at Martin Company.

Orkin is the nation's largest pest control company, employing 6,000 employees. Its turnover rate among these employees, including part-time and seasonal employees is approximately 800 to 1,100 per month. Orkin has more than 300 branches, 90 of which are located in the area of Orkin-Martin competition. Martin Company operates 21 local branches resulting in a total of approximately 150-200 employees for the parent and subsidiary companies.

Since its formation, Martin Company has solicited

Orkin employees to fill vacancies as they occurred. Of the 106 Orkin employees allegedly solicited by Martin over a four-year period, only 60 were shown as ever having subsequently been employed at Martin. Of these at least 10 were either unemployed or employed by a third party before joining Martin Company. Approximately 30 others initiated contact with Martin regarding their employment, and at least 35 of those solicited by Martin never came to work for it. Orkin, on the other hand, has also solicited personnel from Martin, including but not limited to those Martin employees who had previously worked for Orkin. The court also found that Martin followed no scheme or systematic plan to induce employees to leave Orkin; many of those leaving Orkin deposed, under oath, they left or would have done so because of working conditions and no employee was induced to leave by receiving false statements regarding Orkin's financial condition nor any other material misstatement.

In its conclusions of law, the trial court first ruled out an injunction because having decided to summarily handle the case, there was "little likelihood of success on the merits in this case" and stated Orkin failed to demonstrate a degree of harm resulting from Martin's past activities which would indicate a likelihood of future harm sufficient to warrant injunctive relief. It also stated Orkin failed to show its injury was not measurable in damages, and there was no showing the employee services claimed lost were of a unique nature or that circumstances would render it difficult to replace them. Finding no malicious intent through plan or scheme to harm Orkin and finding little possibility that Orkin could prove irreparable injury, the injunction was denied. Our review of this transcript and record substantially confirms the trial court's findings of fact. We also note that Orkin's "proof" was somewhat distorted when claiming that most employees solicited were "managers" when in fact many were sub-managerial employees, and others whom Orkin claimed were solicited had in fact been severed from Orkin for some length of time before being hired by Martin Company. In the latter instances, the employee files, demanded by Martin for production,

were "missing or misplaced." Affidavits contradicting this evidence were undisputed.

Regarding the motion for summary judgment, the trial court found the total number of employees hired by Martin was approximately 30 employees over the four-year period while Orkin's brief of evidence filed with the court listed only 29 employees who allegedly were actually induced to leave.

This court accepted all evidence offered by Orkin and considered it in a light most favorable to Orkin, including a disputed statement by one employee, who subsequently left Martin to work for Orkin, that a Martin official told him there was no time or money for a training program, "go steal the managers you need from Orkin." Orkin allegedly lost 11 branch managers to Martin, but the court also pointed out that 7 of these had since returned to work at Orkin due to equally strong counter-inducements offered by that company in competition for Martin's employees.

The trial court reduced the issue to be decided to the following: Does the successful solicitation of approximately 30 employees, including 11 branch managers out of a total of 90 solicited in the competitive area, by a competitor formed by plaintiff's former employees and a large percentage of whose employees worked for plaintiff at some time, and who preferred hiring trained managers from plaintiff to training new personnel, constitute intentional interference with plaintiff's contractual relations of employment where the employment contracts are terminable at will and where no other particular provisions of the contracts have been violated?

The order of the court states the parties agreed that the case was controlled by *Architectural Mfg. Co. v. Airotec, Inc.,* 119 Ga. App. 245 (166 SE2d 744) (1969), cert. den. The court found in that case an actionable tort existed where practically the entire sales force of AMCOA was solicited and over one-third hired away by Airotec, seriously affecting AMCOA's ability to operate successfully and therefore damaging its livelihood. In *Airotec,* the Court of Appeals found the solicitation of personnel was not from the general market, but solely

from AMCOA, defendants made untrue statements regarding AMCOA's financial condition- and were guilty of other improprieties.

After reviewing *Airotec* and other pertinent cases, the trial court here found that the tort of interference with contractual relations does not lie where a privilege exists which exempts such competition for employees from that claim. The court applied the standards set out in Restatement, Torts, § 768, which if not violated establishes the privilege, and found no violation of them exists under the circumstances and evidence in this case. Those standards are (a) the relation concerns a matter involved in the competition between the actor and the competitor; (b) the actor does not employ improper means; (c) the actor does not intend thereby to create or continue an illegal restraint of competition; and (d) the actor's purpose is at least in part to advance its interests in its competition with the other. Restatement, Torts, § 768. The trial court here, applying *Airotec,* held Martin Company officers had a right to claim a privilege and ". . . to terminate their at-will employment, to engage in direct competition, to hire others who formerly worked for the employer, even to persuade them that their company offers better economic opportunity, so long as they interfere with no contractual rights." *Airotec,* supra, at p. 250. Appellant assigns 12 enumerations of error. We affirm.

1. The issue on appeal is whether or not appellant sufficiently rebutted appellee's evidence which pierced the pleadings and established a prima facie case for summary judgment so as to create a genuine issue as to a material fact. Code Ann. § 81A-156 (e) (Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238). We do not think so. Giving every reasonable inference to appellant, the record and transcript here, while raising some disputed issues, i.e., whether or not the Martin president told an ex-employee to go out and steal managers from Orkin, does not establish a plan or scheme of such intensity or effect as to interfere with Orkin's livelihood, seriously damage that company's ability to function, or cause a breach of employment contract. Overly-restrictive covenants in employment contracts or other similar considerations

which place a restraint upon the free movement of employees in the marketplace as opportunity, experience and competition permits is contrary to this court's view of fair competition. However, we recognize there are limits to the kinds of inducement which may be permitted. Thus, we adopt the theory of privilege as set out in the Restatement, Torts, § 768, including the limitations upon which the privilege rests. The violation of these limitations was denounced by the Court of Appeals in *Airotec,* supra. We do not find appellant has sufficiently established a violation of these standards to rebut appellee's case claiming the privilege and thereby make a case for the jury. There was no error in denying the injunction and in the grant of summary judgment to appellee.

2. We have carefully reviewed the challenges to certain of the trial court's findings of fact and conclusions of law as set out by appellant in its Enumerations 5 through 12. We find no error.

3. In its supplemental brief, appellant asserts that this court's recent decision in *Nasco, Inc. v. Gimbert,* 239 Ga. 675 (238 SE2d 368) (1977), does not support appellee's theory of privilege. *Nasco* does not consider that subject and therefore is inapposite.

*Judgment affirmed. All the Justices concur, except Jordan, J., who dissents.*

ARGUED JANUARY 9, 1978 — DECIDED FEBRUARY 7, 1978.

*Decker & Duncan, Richard P. Decker,* for appellant.
*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., James C. Rawls,* for appellees.

JORDAN, Justice, dissenting.

In my opinion the trial court erred in granting Martin's motion for summary judgment. A fact issue was clearly raised as to whether Martin's actions constituted "intentional interference with plaintiff's contractual relations of employment" with its employees.