### 73952. NATIONWIDE ADVERTISING SERVICE, INC. v. THOMPSON RECRUITMENT ADVERTISING, INC. et al.
(359 SE2d 737)

POPE, Judge.

Defendant Linda Pierce was employed as a customer service director by plaintiff Nationwide Advertising Service, Inc., from February 16, 1981 to October 14, 1983. Pierce's duties as a customer service director included receiving advertisements over the telephone and making sure the customers' ads were properly placed. On October 17, 1983 Pierce began working in a similar position for a direct competitor of plaintiff, defendant Thompson Recruitment Advertising, Inc. Although Pierce was a terminable-at-will employee of plaintiff, she had signed an employment agreement which contained certain non-competition, non-disclosure and non-solicitation covenants.

Plaintiff filed suit against the defendants on November 17, 1983 alleging, inter alia, tortious interference with various business, property, fiduciary and proprietary rights; breach of contract; breach of fiduciary duty; tortious interference with legitimate business interests; and the use of unfair methods of competition. Defendants answered, denying plaintiff's claims against them and, following discovery, moved for summary judgment on May 10, 1985. On October 16, 1985 plaintiff filed its response to defendants' motion for summary judgment and an amended complaint, in which it substituted the phrase "business relations" for the phrase "business interests" as used in Count 4 of its complaint. On April 22, 1986 the trial court entered an order granting summary judgment to both defendants and plaintiff appeals.

1. In its first two enumerations of error, plaintiff challenges the

portion of the trial court's order granting summary judgment on Count 4 of its amended complaint. The record shows that on November 14, 1985, after plaintiff amended Count 4 of its complaint, defendants filed a reply brief to plaintiff's response to their summary judgment motion in which defendants asserted the defense of privilege as to Count 4 of the complaint and in which they argued that the record contained no evidence to support plaintiff's claim. In this reply brief, however, defendants employed the term "business interests" as used in the original complaint, as well as the term "business relationships." Thus, plaintiff argues, defendants have failed timely to address the issues raised by its *amended* complaint. We disagree. The record shows that plaintiff amended its complaint following the filing of numerous extensions of time in which to file its response to defendants' motion for summary judgment. Thereafter, the parties requested that the trial court delay ruling on defendants' motion while the parties proceeded with settlement negotiations; the parties also requested that the motion be decided on the briefs without oral argument. Negotiation efforts apparently having failed, plaintiff filed a "letter brief" in open court on November 14, 1985, in which it again presented its position as to defendants' summary judgment motion. On that same date, and also in open court, defendants filed their reply brief. Under these facts, we decline to find that defendants failed to timely present their arguments as to plaintiff's amended Count 4. We also decline to find that the issues contained therein have never been briefed or argued by defendants simply because defendants did not employ the term "business relations" throughout its argument in response to Count 4. Likewise, we find no merit to plaintiff's argument that summary judgment should be denied because defendants failed to amend their *motion* for summary judgment after plaintiff amended its complaint, since defendants' original motion contained only a general statement that defendants were entitled to judgment as a matter of law.[1]

Turning now to the substance of Count 4, we note first that " '[i]n establishing a cause of action for malicious (or tortious) interference with business relations, a plaintiff (here, [Nationwide]) must demonstrate that the [defendants] (here, [Pierce and Thompson] (1) acted improperly and without privilege, (2) purposely and with malice

---

[1] Plaintiff also argues that the trial court erred in finding its claim for tortious interference with business relations and its claim for unfair methods of competition (Count 5 of plaintiff's complaint) redundant of Counts 1 and 2 of its complaint. However, on a motion for summary judgment, a trial court is not obligated to make findings of fact and conclusions of law, *Victor v. First Trust &c. Co.*, 154 Ga. App. 97 (2) (267 SE2d 639) (1980), and thus we decline to find the court's statement concerning the redundant nature of plaintiff's claims dispositive of the issue of whether summary judgment was appropriately granted to defendants on those claims.

with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury.' [Cits.]" *Integrated Micro Systems v. NEC Home Electronics*, 174 Ga. App. 197, 200 (329 SE2d 554) (1985).

We will first address defendants' argument that the record contains no evidence to support plaintiff's claim as it relates to defendant Pierce. Plaintiff contends that the following facts demonstrate the existence of genuine issues of material fact as to said claim: (1) the means by which Daniel Construction Company, a major account of plaintiff and whose account Pierce served while employed by plaintiff was induced to switch its business to Thompson; (2) confidential documents prepared by Pierce *while* plaintiff's employee appeared in Thompson's file; and (3) Pierce rewrote and cut plaintiff's advertising forms for use by Thompson." However, our review of the rather voluminous record in the present case does not support plaintiff's claim; rather, the unrebutted affidavit and deposition testimony of defendants shows the following: Prior to Pierce's employment with Thompson, Thompson was actively pursuing the Daniel account; while Pierce was still employed by plaintiff, she was informed by one of Daniel's representatives that it was placing some of its business with Thompson and Pierce relayed this information to plaintiff; Pierce did not participate in any cost comparisons produced for Daniel by Thompson; Pierce informed Daniel (as well as the other accounts she handled) only that she was leaving her position with plaintiff; she specifically did not notify Daniel (or the other accounts) that she was going to work for a competitor; Pierce was not hired to solicit new business for Thompson, and she was specifically instructed not to solicit former contacts or provide information to Thompson concerning her contacts; Thompson's reworking or reduction of Daniel's ad, which was originally produced by plaintiff, was done prior to Pierce's employment with Thompson; Pierce learned that Thompson reworked the ad from her Daniel customer contact while she was still employed by plaintiff. Accordingly, we agree with defendants that plaintiff has failed to support its claim for tortious interference with business relations against Pierce; hence, the trial court did not err in granting summary judgment as to that defendant on Count 4 of plaintiff's complaint. See generally *Davis v. Aetna Cas. &c. Co.*, 180 Ga. App. 567 (349 SE2d 525) (1986); *Buffington v. Gold Kist*, 179 Ga. App. 393 (346 SE2d 577) (1986).

In order to determine whether summary adjudication was also proper as to defendant Thompson, however, we must consider whether its activities in pursuing plaintiff's customers, including the Daniel account, were privileged, thereby negating an essential element of plaintiff's tortious interference claim. To establish a claim of

privilege, Thompson must show that "(1) the relation concerns a matter involved in the competition between the actor and the competitor; (2) the actor does not use improper means; (3) the actor does not intend thereby to create or continue an illegal restraint of competition; and (4) the actor's purpose is at least in part to advance its interests in competition with the other." *Sofate of America, Inc. v. Brown*, 171 Ga. App. 39, 40 (318 SE2d 771) (1984); *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662, 666 (242 SE2d 135) (1978).

In the present case there is no doubt that plaintiff and Thompson are competitors and that obtaining advertising accounts concerns a matter which lies at the heart of their competitive activities. Conversely, however, there is no evidence that Thompson intended to monopolize or otherwise create an illegal restraint of trade in the advertising arena, or stated differently, sought to prevent plaintiff or others from participating in the advertising field. Additionally, it cannot be disputed that Thompson's purpose was to advance its position vis-a-vis plaintiff and its other competitors. Thus, the only issue remaining for our consideration is whether Thompson sought to achieve its goals by the use of improper means. In this regard we are again persuaded by the unrebutted deposition and affidavit testimony of both Dick Kirksey (Thompson's representative) and Pierce that Pierce did not supply Thompson with any information concerning her previous customer accounts or otherwise assist Thompson in gaining said accounts. Further, the record shows that Daniel, whom plaintiff insists decided to give Thompson some of its advertising business on a trial basis solely because Pierce was to be employed there, actually made that decision prior to Pierce terminating her employment relationship with plaintiff and, according to Pierce's unrebutted testimony, she informed her employer of Daniel's intentions. Indeed, contrary to plaintiff's assertion, there is no evidence that any account "followed" Pierce to her new employer; rather, the evidence shows that Thompson instructed Pierce not to inform the accounts she serviced that she would be working for a competitor. Based on the above, we find no evidence that Thompson employed Pierce to lure plaintiff's clients to it or that Thompson otherwise employed improper means in its competitive efforts against plaintiff. There being nothing in the record to rebut Thompson's contention that its activities were privileged, we find that the trial court also did not err in granting summary judgment as to it on Count 4 of plaintiff's complaint. See *Orkin*, supra at (1); see also *Kem Mfg. Corp. v. Sant*, 182 Ga. App. 135 (7b) (355 SE2d 437). Cf. *Integrated Micro Systems*, supra at 202.

2. Plaintiff also contends that defendants failed timely to present argument in support of their summary judgment motion as to Count 5 of plaintiff's complaint, in which plaintiff alleges that defendants

used unfair methods of competition against it. The record shows, however, that defendants addressed Count 5 of plaintiff's complaint in their reply brief filed on November 14, 1985. Thus, for the reasons stated in Division 1, supra, we likewise find this argument to be without merit.

Turning now to a consideration of the merits of plaintiff's claim, we note first that in Georgia the term unfair competition is a nomenclature for the doctrine that one cannot pass off his goods as those of another. E.g., *Hayes v. Hallmark Apts.*, 232 Ga. 307 (3) (207 SE2d 197) (1974). In support of its claim, plaintiff argues that the record indicates that defendants "deliberately engendered confusion in customers by producing advertising which, while diminished in size, was so strikingly similar that the customer could believe that it was placing the same advertisement (and receiving the same service) as it had while a customer of [plaintiff]." However, our review of the record again indicates no evidence to support plaintiff's claim. The uncontradicted evidence shows that Daniel gave Thompson an advertisement produced for Daniel by plaintiff and Thompson then reduced it to show Daniel how money could be saved by running a smaller advertisement. Daniel's representative then contacted Pierce, who was at that time still plaintiff's employee, and inquired of her why plaintiff had not used a smaller version of the ad in order to save them money. Other than plaintiff's unsupported allegations, there is no evidence that Daniel (or any other account of plaintiff) was confused as to the source of the advertisement produced for it by plaintiff, or that Thompson attempted to pass off plaintiff's product as that of its own; indeed, the record suggests clearly that Daniel knew from whom the work product originated. Accordingly, the trial court did not err in granting summary judgment to defendants as to the claims stated in Count 5 of plaintiff's complaint. Cf. *Reis v. Ralls*, 250 Ga. 721 (2) (301 SE2d 40) (1983); *Hayes*, supra at 310.

3. Plaintiff next asserts as error the trial court's grant of summary judgment on Count 1 of its complaint, in which plaintiff alleges tortious interference with its proprietary, property, fiduciary and business rights. In essence, the factual predicate for plaintiff's claim is Thompson's alleged behavior in inducing Pierce and others to leave plaintiff's employ. Thompson argues that its activities in interviewing certain of plaintiff's employees and in hiring Pierce were privileged. Plaintiff contends, however, that Thompson used improper means in attempting to hire its employees, and therefore Thompson's claim of privilege must fail. Again, we must review the record evidence to determine whether summary judgment was appropriately granted as to this issue.

In her deposition Pierce testified unequivocally that she was unhappy working for plaintiff and that she had so informed her superi-

ors; she also testified that she would have given notice of her intent to leave plaintiff's employ on September 30, 1983 even if she had not found another position. Pierce further testified that, if necessary, she was willing to seek employment outside her field in order to leave plaintiff's employ. Both Pierce and Kirksey testified that Pierce initiated contact with Thompson through a third party. Kirksey testified that although Pierce was given a salary increase of approximately $1,500 a year, she was not offered any special incentives other than those offered to all employees at Thompson. Kirksey also testified that he contacted another of plaintiff's employees a few months prior to hiring Pierce, but that he did not pursue hiring that person after she informed him she was not interested in changing employers. Kirksey further testified that Pierce referred another of plaintiff's employees to him but that he did not extend a job offer to that employee. Kirksey testified that he talked with these employees because Thompson's business was growing and he needed qualified people. Lastly, the record shows that Pierce admitted socializing with some of plaintiff's other employees (her former co-workers) after hours and that they told her they were dissatisfied with their employment situation; however, except for the referral mentioned above, Pierce testified that she did not solicit those employees or suggest they come to work for Thompson. In our opinion, these facts wholly refute plaintiff's unsupported allegation that "Kirksey wanted to strip his competition of its entire ability to complete [sic] by soliciting *all* of the customer service personnel."

Plaintiff also contends that Pierce continued to work for it for two weeks after she was hired by Thompson so as to enable her to contact the accounts she serviced and lure them to Thompson's agency. We note first that Pierce's employment contract expressly provides that "[e]mployee shall give to [plaintiff] not less than two weeks written notice of termination of this Contract," and that Pierce complied with said provision by giving plaintiff notice on September 30, 1983. Moreover, the record is uncontradicted that Pierce did not inform the accounts she serviced she was going to work for a competitor, and that Thompson instructed her not to inform her accounts of her new employment. Thus, again based on defendants' uncontradicted evidence of record, we find that plaintiff has wholly failed to rebut the claim of privilege. Accordingly, the trial court did not err in granting summary judgment to defendants as to the claims alleged in Count 1 of plaintiff's complaint. Accord *Orkin*, supra at (1); *Sofate*, supra at (1).

4. Plaintiff also contends that the trial court erred in granting summary judgment on Count 3 of its complaint in which plaintiff alleges that Pierce breached certain fiduciary duties. In support of said claim plaintiff argues that Pierce attempted to lure accounts away

from it, especially the large Daniel account. As stated above, the evidence shows otherwise. Likewise, the record shows that Pierce did not attempt to influence her former co-workers to terminate their employment with plaintiff and come to work for Thompson (see Division 3, supra). Lastly, as to whether Pierce provided Thompson with confidential information, Pierce's testimony, as well as Kirksey's, is uncontradicted that she did not provide Thompson with any such information; moreover, she was specifically instructed not to provide any information to Thompson. Thus, the record is devoid of evidence to support Count 3 of plaintiff's complaint. Moreover, we note also that except for plaintiff's contention that Pierce tried to lure clients to her new employer during the last two weeks she was employed by plaintiff, all other improper activities allegedly occurred after she left plaintiff's employ; thus, the "allegations of [plaintiff's complaint] were not sufficient to state a breach during the life of the agency relationship, [and] the trial court did not err in [granting summary judgment on plaintiff's claim] for breach of fiduciary duty." *Kem Mfg.,* supra at 142.

5. Plaintiff also challenges the trial court's finding that the noncompetition provision contained in the employment agreement between plaintiff and Pierce was "fatally overbroad and indefinite" and thus urges as error the trial court's order insofar as it grants summary judgment on Count 2 of its complaint. With regard to competitive activities and solicitation of plaintiff's clients after the employee's employment relationship with plaintiff ended, the employment agreement provides as follows: "Employee . . . separately and specifically covenants that during the term of this Agreement and for a period of two (2) years after termination of Employee's employment with [plaintiff], Employee shall not, directly or indirectly, engage or participate in any business that is in competition in any manner whatsoever with the business of [plaintiff], . . . nor shall Employee solicit or circularize or have another solicit or circularize any . . . customer or prospective customer of [plaintiff] that may have had business dealings or negotiations with [plaintiff] during the twelve (12)-month period immediately preceding the termination of Employee's employment with [plaintiff]. . . . These restrictions shall apply to the geographical area serviced by [plaintiff's] place of business located at 229 Peachtree Street North East [in Atlanta, Georgia.]

" 'A covenant not to compete, being in partial restraint of trade, is not favored in the law, and will be upheld only when strictly limited in time, territorial effect, the capacity in which the employee is prohibited from competing and when it is otherwise reasonable.' *Beckman v. Cox Broadcasting Corp.,* 250 Ga. 127, 129 (296 SE2d 566) (1982)." *Kem Mfg.,* supra at 141.

Considering first the capacity in which Pierce is prohibited from

competing against plaintiff, plaintiff argues that the phrase "directly or indirectly engage or participate in any business that is in competition in any manner whatsoever with the business of [plaintiff]" does not preclude Pierce from working for a competitor in *any* capacity, as found by the trial court. We fail to see, however, how the plain language of the agreement can be interpreted in any other manner. This court has held that a contract which prohibits an employee from working for any competitor in any capacity "fails to specify with particularity the activities which the employee is prohibited from performing and is therefore too indefinite to be enforceable. [Cits.] Moreover, [the] same provision renders the covenant overbroad and thus unenforceable because it 'imposes a greater limitation upon the employee than is necessary for the protection of the employer.' [Cits.]" *McNeal Group v. Restivo*, 252 Ga. 112 (311 SE2d 831) (1984); *Uni-Worth Enterprises v. Wilson*, 244 Ga. 636, 640 (261 SE2d 572) (1979). Cf. *Pierce v. Industrial Boiler Co.*, 252 Ga. 558 (2) (315 SE2d 423) (1984), in which the employee was prohibited from competing "in any capacity held by employee," thereby limiting the covenant to those activities actually performed by the employee for the employer.

We note also that the territory specified, which appears to apply to all the restrictions contained therein, covers the entire area serviced by plaintiff's Atlanta office ("geographical area serviced by [plaintiff's] place of business located at 229 Peachtree Street North East"). Thus, under the terms of the agreement, the employee is prohibited from soliciting any customer serviced by plaintiff's Atlanta office, regardless of whether the employee actually had contact with that client while employed by plaintiff. In such a situation, our Supreme Court has held a similar provision unenforceable because it " 'unfairly restricts ordinary competition and provides [plaintiff] with greater protection than it needs.' [Cits.]" *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539 (307 SE2d 914) (1983); see also *Uni-Worth*, supra at 639. In addition, the territorial restriction as it relates to the non-competition provision of the agreement is likewise unenforceable. See *Kem Mfg.*, supra at (5); *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181 (1) (236 SE2d 265) (1977). Cf. *Nunn v. Orkin Exterminating Co.*, 256 Ga. 558 (1a) (350 SE2d 425) (1986). Lastly, we note that the Georgia courts have "rejected the 'blue pencil theory of severability' as applied to restrictive covenants in employment contracts. [Cits.] Therefore, if any of the sub-paragraphs of the restrictive covenant are invalid, the entire covenant must fall." *Uni-Worth*, supra at 640. Based on the foregoing, we find both the non-competition and non-solicitation clauses in the present agreement void and unenforceable as a matter of law; hence, the trial court did not err in granting summary judgment on Count 2 of plaintiff's complaint to the extent it states a cause of action based on Pierce's violation of those covenants.

6. Lastly, plaintiff argues that even if the trial court did not err in finding the non-competition provisions of its employment contract unenforceable, the trial court nevertheless erred in granting summary judgment as to Count 2 of its complaint, because the non-disclosure provision of its agreement with Pierce was valid and enforceable. "The tests used to determine the validity of a non-competition and a non-disclosure provision are not the same. Unlike general non-competition provisions . . . specific non-disclosure clauses bear no relation to territorial limitations and their reasonableness turns on factors of time and the nature of the business interest sought to be protected. The two important factors are (1) whether the employer is attempting to protect confidential information relating to the business, such as trade secrets, methods of operation, names of customers, personnel data, and so on — even though the information does not rise to the stature of a trade secret; and (2) whether the restraint is reasonably related to the protection of the information." (Citations and punctuation omitted.) *Kem Mfg.*, supra at 139.

In the case sub judice the employment agreement provides that the employee shall not, "either directly or indirectly, divulge, disclose or communicate to any other person [plaintiff's] customer lists, credit classifications, records, statistics, the identity of [plaintiff's] customers or prospective customers with whom Employee has contacted or dealt, or any other information acquired by Employee in the course of his/her employment in any capacity whatsoever. . . ." "In considering this paragraph, we are unable to say as a matter of law that this provision is void as a restraint of trade. The legitimacy of the need to maintain the confidentiality of such information is a question of fact whose resolution is for the jury. [Cits.]" *Kem Mfg.*, supra at 139.

In the present case, however, finding that the covenant against non-disclosure is not void as a matter of law does not end our inquiry as to whether summary judgment was properly granted as to this issue. Again, we must consider whether the evidence of record supports plaintiff's claim that Pierce violated this provision. In this regard, plaintiff points to the fact that a report prepared by it for the Daniel account was found in Thompson's file. However, defendant Pierce and defendant Thompson testified unequivocally that Pierce did not disclose any confidential or other information protected by the employment agreement. Indeed, Pierce specifically testified that she did not give the Daniel report to Thompson. " 'If a prima facie showing is made that the moving party in summary judgment is entitled to judgment as a matter of law, the opposing party must come forward with rebuttal evidence at that time or suffer judgment against him. When a motion for summary judgment is made and supported by evidence outside the pleadings, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits

or otherwise, *must set forth specific facts* showing that there is a genuine issue for trial.' (Citations and punctuation omitted.) *Dunoco Dev. Corp. v. Ed Taylor Constr. Co.*, 178 Ga. App. 738 (344 SE2d 531) (1986)." *Kem Mfg.*, supra at 141; see also *Buffington v. Gold Kist*, 179 Ga. App. 393, supra; *Kelly v. American Fed. Sav. &c. Assn.*, 178 Ga. App. 542 (343 SE2d 755) (1986). Hence, we find the trial court did not err in granting summary judgment to defendants on the remainder of Count 2 of plaintiff's complaint.

*Judgment affirmed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED JULY 14, 1987.

*James E. Goodman, F. Clay Bush*, for appellant.
*Robert M. Martin, John G. Parker*, for appellees.