A90A0959. FOREHAND v. PERLIS REALTY COMPANY et al.
A90A1213. BELK-HAGINS COMPANY OF AMERICUS,
GEORGIA, INC. v. FOREHAND.
(400 SE2d 644)

Cooper, Judge.

W. F. Forehand, Jr. ("Forehand") is the successor in title to a shopping center in which Belk-Hagins Company ("Belk-Hagins") is the principal tenant under a 20-year lease signed in 1975. Under the lease, Belk-Hagins was to pay annual rent in the amount of $40,000 plus 2.5 percent of all annual gross sales over 1.6 million dollars.

The record reflects that during the summer of 1986, Larry Perlis, owner of Perlis Realty Company ("Perlis"), approached representatives of Belk-Hagins about the possibility of Belk-Hagins moving its location from Forehand's shopping center to a shopping center owned by Perlis. The representatives of Belk-Hagins were interested in moving into a better shopping center and felt that the Perlis shopping center was a better location for their business than the one owned by Forehand. Belk-Hagins together with Belk Stores Services, Inc. ("BSS"), an independent corporation existing to provide advice to individual Belk stores, began negotiating with Perlis about changing locations. Belk-Hagins and BSS informed Perlis about the 1975 lease, and Perlis agreed to assume all of Belk-Hagins' obligations under that lease if Belk-Hagins moved its store to Perlis' shopping center. In May 1987, Belk-Hagins executed a lease with Perlis Realty Company ("Perlis") and subsequently moved from Forehand's shopping center to the shopping center owned by Perlis. Belk-Hagins continued to pay Forehand the minimum annual rent of $40,000 and deducted that amount from its rental payment made under the Perlis lease; however, no percentage rentals were paid to Forehand. In February 1989, Forehand filed a ten-count complaint alleging breach of contract by Belk-Hagins in abandoning Forehand's shopping center and in assigning the lease to Perlis in violation of the 1975 lease, and tortious interference with contractual relations by Perlis and BSS. Subsequently, Belk-Hagins terminated the 1975 lease and ceased making the minimum annual payments to Forehand. Belk-Hagins answered the complaint, denying that it breached the lease, and filed a counterclaim contending that Forehand committed several breaches of the lease. Forehand then amended his complaint, seeking damages for monthly rental payments and ad valorem taxes due through the end of the lease, and also attorney fees and expenses of litigation. Belk-Hagins, Perlis, and BSS moved for partial summary judgment on Forehand's original complaint. The trial court denied the motion on the breach of contract counts of the complaint but granted it on the tortious interference counts. Subsequently, Belk-Hagins filed a motion for summary judgment on Forehand's amended complaint and a

motion for partial summary judgment on its counterclaim against Forehand. Forehand also filed a motion for summary judgment on Belk-Hagins' counterclaim. The trial court denied both of Belk-Hagins' motions and granted Forehand's motion.

In Case No. A90A0959 Forehand appeals the trial court's grant of summary judgment to Perlis and BSS on the tortious interference of contract claim. In Case No. A90A1213 Belk-Hagins appeals (1) the trial court's denial of both of its motions for summary judgment on Forehand's complaint, (2) the denial of Belk-Hagins' motion for summary judgment on its counterclaim against Forehand, and (3) the grant of summary judgment to Forehand on Belk-Hagins' counterclaim.

### *Case No. A90A0959*

Forehand contends that because the trial court found that questions of fact existed for a jury's determination on the breach of contract claim, the trial court's grant of summary judgment on the tortious interference with contract claim was erroneous. Forehand erroneously argues that in order for the trial court to grant summary judgment on the tortious interference with contract claim, it was necessary for the court to determine that there had been no breach of the lease.

"The intentional and *non-privileged* interference by a third party with existing contractual rights and relations constitutes a tort for which an action shall lie. [Cits.] Furthermore, the courts of this state have recognized that such interference with a contractual right or relationship need not result in a breach of the contract to be actionable. It is sufficient if the invasion retards performance of the duties under the contract or makes the performance more difficult or expensive. [Cits.]" (Emphasis supplied.) *McDaniel v. Green*, 156 Ga. App. 549 (1) (275 SE2d 124) (1980). Furthermore, to recover for wrongful interference with contract, a " 'malicious intent to cause the result must be shown.' [Cit.]" *Singleton v. Itson*, 192 Ga. App. 78, 79 (383 SE2d 598) (1989). "The terms 'malicious' and 'maliciously' mean ' "any *unauthorized* interference or any interference *without legal justification or excuse*. . . ." ' [Cit.]" (Emphasis in original.) Id. " 'The exercise of an absolute right or privilege is recognized as being closely akin to the question of justification, but it is inherently different therefrom in that such a right can be exercised without incurring liability regardless of the motive for so doing. It is generally held that no liability for procuring a breach of contract exists where the breach is caused by the exercise of an absolute right — that is, an act which a man has a definite legal right to do without any qualification.' [Cits.]" *Campbell v. Carroll*, 121 Ga. App. 497 (1) (174 SE2d 375) (1970). Our review of

the record shows that Perlis and BSS' actions were neither "non-privileged" nor "malicious." Perlis and Forehand were both in the business of leasing space to commercial businesses such as Belk-Hagins. Perlis' actions consisted of nothing more than making a sales pitch for Belk-Hagins to relocate their business and providing an alternative which was more attractive to Belk-Hagins than the situation they were currently operating under. There is no evidence that Perlis, by pursuing Belk-Hagins, was creating or continuing an illegal restraint of trade or that Perlis was motivated by a desire to injure Forehand. Rather, it appears that Perlis was interested only in fair competition. See *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662, 666 (242 SE2d 135) (1978); *Nationwide Advertising Svc. v. Thompson Recruitment Advertising*, 183 Ga. App. 678 (1) (359 SE2d 737) (1987); *Architectural Mfg. Co. v. Airotec, Inc.*, 119 Ga. App. 245 (1) (166 SE2d 744) (1969). Therefore, we conclude that the trial court properly granted summary judgment on Forehand's claim of tortious interference with contract. Although the trial court did not indicate in its order its reasons for granting summary judgment, "a judgment of the trial court will be affirmed if it is right for any reason." *Chitwood v. Southern Gen. Ins. Co.*, 189 Ga. App. 697, 699 (2) (377 SE2d 210) (1988).

### Case No. A90A1213

1. In the cross-appeal, Belk-Hagins enumerates as error the trial court's denial of summary judgment on the breach of contract counts of Forehand's complaint. Belk-Hagins contends that no breach occurred because there was no assignment of the lease to Perlis and because the 1975 lease did not require that Belk-Hagins continue to operate at Forehand's shopping center.

Forehand argues that upon entering into the Perlis lease which provided that "as additional consideration for tenant's leasing of the demised premises from landlord as herein provided, landlord agrees (1) to assume, and does hereby assume . . . all of tenant's obligations, duties, responsibilities and rights in, to and under [the 1975 lease]," Belk-Hagins breached paragraph 36 of the 1975 lease, which provided: "Tenant shall not assign or sublet these premises in whole or in part without first obtaining the consent of Landlord." Belk-Hagins argues that no prohibited assignment took place because Perlis only *assumed* Belk-Hagins' obligations under the lease. "Black's Law Dictionary . . . defines *assignment* as '(a) transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein. It includes transfers of all kinds of property. . . . The transfer by a party of all its rights to some kind of property, usually intangible property. . . .' [Cit.]" *Bank*

*of Cave Spring v. Gold Kist,* 173 Ga. App. 679 (1) (327 SE2d 800) (1985). " 'Assumption' is defined in Black's Law Dictionary as '[t]he act or agreement of assuming or taking upon one's self; the undertaking or adoption of a debt or obligation primarily resting upon another. . . .' " *Manget Foundation v. White,* 101 Ga. App. 239, 241 (113 SE2d 235) (1960). We cannot accept Belk-Hagins' argument that there was no assignment merely because the word "assume" was used in the Perlis lease. Perlis not only assumed Belk-Hagins' duty and obligation to pay rent under the 1975 lease, but also agreed to assume any rights Belk-Hagins had under the lease. The evidence in the record reflects that Perlis was working with Forehand in trying to find a new tenant for the premises and that Perlis and Belk-Hagins were under the impression that Perlis acquired whatever rights Belk-Hagins had under the lease. We find sufficient evidence in the record to raise a question of fact as to whether Belk-Hagins in substance assigned the 1975 lease to Perlis.

Although the 1975 lease does not expressly require Belk-Hagins to continue operations at Forehand's shopping center, Forehand contends that there is implied in the lease a covenant of continued operation. Belk-Hagins submitted the affidavit of two persons who participated in the negotiation of the 1975 lease, and both stated that it was their understanding that the 1975 lease contained neither an affirmative obligation to continue operations at the leased premises nor a prohibition against abandoning operations at the location. In *Kroger Co. v. Bonny Corp.,* 134 Ga. App. 834 (216 SE2d 341) (1975), this court considered the question of whether a lease which included among its provisions a percentage rental implied a duty on the part of the tenant to continue operations during the term of the leasehold. We began our analysis by noting the absence of evidence of the intention of the parties, but attempted to arrive at the intention of the parties by taking into consideration "the composition of the shopping center as a whole, the content of the leases entered into with other tenants, and the rental payments made over the years." *Kroger,* supra at 837. We held that the lease did not place an obligation on the tenant to continue the operation of a shopping center on the premises for the full term of the lease, and we reversed the trial court's denial of summary judgment to the tenant. In *Fifth Ave. Shopping Center v. Grand Union Co.,* 491 FSupp. 77 (N.D. Ga. 1980), the court stated that the question of whether a lease contains an implied covenant of continuous occupancy concerns the intention of the parties as disclosed by the circumstances surrounding the execution of the lease agreement. The court considered relevant such factors as "the history of the relationship between the parties, their reasonable expectations, and all other factors bearing upon their intention in entering into the lease." Id. at 81. The court stated: "These are matters which present

a factual question which cannot be decided as a matter of law, since in the instant case the lease makes no provision covering such circumstances and the intent of the parties is uncertain. [Cit.]" *Fifth Ave.*, supra at Division 3. In both *Kroger* and *Fifth Ave.* the record was devoid of any evidence of the intentions of the parties. In the case sub judice, there is uncontroverted affidavit testimony from persons who participated in the negotiation of the lease that neither party understood the lease to require the tenant to occupy the premises for the duration of the lease. However, the affidavit testimony notwithstanding, we conclude that questions of fact remain regarding whether the minimum rental was so substantial as to negate any implication of an implied covenant of operation (see *Kroger*, supra at Division 2; *Fifth Ave.*, supra at Division 2), and whether an implied covenant is necessary to effectuate the agreement between the parties (see *Kroger*, supra). Accordingly, we find no error in the trial court's denial of summary judgment to Belk-Hagins on the breach of contract counts of Forehand's complaint.

2. Belk-Hagins' second, third, and fourth enumerations of error require determining whether Forehand breached the 1975 lease such that Belk-Hagins was authorized to terminate the lease without any further liability. Belk-Hagins contends in its counterclaim that Forehand's predecessor breached the 1975 lease by failing to include certain required covenants in the deed conveying the shopping center to Forehand in 1982; that Forehand breached the lease by also failing to include the covenant when it conveyed portions of the shopping center in 1983 and 1985; and that Forehand failed to maintain the premises in the manner required by the 1975 lease, failed to comply with provisions of the 1975 lease regarding unlawful or offensive use of the shopping center and failed to comply with provisions of the lease regarding a minimum number of parking spaces.

The 1975 lease included a covenant which required the landlord to obtain Belk-Hagins' consent before entering into any lease for occupancy of more than 25,000 square feet in the shopping center. Paragraph 19 of the lease provided: "In the event Landlord should sell the above mentioned shopping center or any additions thereto or in any other way divest itself of the control thereof, then the covenant herein contained shall also be contained in the deed of sale or covenant or disposition." Belk-Hagins does not contend that the covenant was not complied with, only that it was not recorded in subsequent deeds. The record reflects that Belk-Hagins knew that the shopping center had been sold to Forehand and that Forehand had sold portions of the shopping center to other persons; that Belk-Hagins never examined the deeds to determine whether the covenant had been included in the deeds; and that Belk-Hagins knew about what it considered to be breaches of the lease as early as 1985 or 1986; that no

action was taken on any of the alleged breaches until after Forehand filed the lawsuit, at which time Belk-Hagins scrutinized the lease and decided to cancel the lease and cease making any further payments under the lease. " 'Forfeitures of rights under valid legal contracts are not favored under the law. Our courts generally are quick to seize upon any waiver of a forfeiture, the rule being that the right to rescind for any breach must be asserted promptly, and a waiver of a breach or forfeiture cannot be recalled.' " *Precision Label Indus. v. Jones*, 185 Ga. App. 161 (1) (363 SE2d 605) (1987). The evidence does not show unequivocally that Forehand breached the 1975 lease; however, assuming arguendo that a breach did occur, Belk-Hagins did not assert the breach in a timely manner and such breach is deemed to have been waived. See *Pearson v. George*, 209 Ga. 938 (2) (77 SE2d 1) (1953); *Redmond v. Merrill Lynch &c. Mgmt.*, 163 Ga. App. 346 (2) (294 SE2d 575) (1982). Because of Belk-Hagins' acquiescence to any breach which occurred, neither an action to cancel the contract nor an action for damages as a result of the breach can be maintained. *Precision Label Indus. v. Jones*, supra. Accordingly, we find no error in the trial court's denial of summary judgment to Belk-Hagins on Forehand's complaint and the counterclaim and the grant of summary judgment to Forehand on the counterclaim.

*Judgments affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED NOVEMBER 21, 1990 —
REHEARING DENIED DECEMBER 20, 1990 — 

*Benjamin F. Easterlin IV*, for Forehand.

*Harman, Owen, Saunders & Sweeney, Timothy J. Sweeney, Walters, Davis, Smith, Meeks & Pittman, W. Emory Walters, C. David Smith*, for Perlis.

*Crisp, Oxford, McKelvey & Jones, Howard S. McKelvey, Jr.*, for Belk-Hagins.