A90A2275, A90A2276. CONTRACTORS' BUILDING SUPPLY, INC. et al. v. GWINNETT SASH & DOOR, INC. et al.; and vice versa.

(403 SE2d 844)

SOGNIER, Chief Judge.

Gwinnett Sash & Door, Inc. ("Sash & Door") and Richard M. Troxel brought suit against Contractors' Building Supply, Inc. and Robert Magbee on a claim of tortious interference with Sash & Door's contractual relationships with its employees Edward Cox, Richard Broadnax, and Jimmy Chadwick. The defendants counterclaimed under *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986) and OCGA § 9-15-14. In Case No. A90A2275, we authorized the defendants' interlocutory appeal from the denial of their motion for summary judgment on the plaintiffs' claims, and in Case No. A90A2276 the plaintiffs cross appeal from the denial of their summary judgment motion on the counterclaim.

From 1974 until 1988, Sash & Door was engaged in the business of selling building materials and supplies to construction contractors. Richard Troxel was the president and sole shareholder of Sash & Door. Robert Magbee has worked for a number of years in the building supply business in the same geographic area. While employed by Magbee Brothers in 1981, Magbee began contemplating starting his own business. He discussed these plans with Edward Cox, who also was employed by Magbee Brothers at the time, and indicated that he would be interested in hiring Cox to work in such a venture. Within the next year or two, Cox began working for Sash & Door as head of its sales operations. Richard Broadnax was employed as operations manager at Sash & Door, and Jimmy Chadwick worked as a shop foreman. None had a written contract or specified term of employment. Sash & Door had three additional employees, one of whom was Troxel's wife, who served as the company's secretary and bookkeeper.

In 1987, Magbee acted on his plan to start a business, and became president and sole shareholder of Contractors' Building Supply ("Building Supply"). In September 1987, he approached Cox and offered him a position with Building Supply, but Cox declined because of his concern about obtaining insurance to cover his wife's pre-existing medical condition. Cox then referred Magbee to Broadnax, who was hired by Building Supply in October. Chadwick, in turn, contacted Broadnax about working for Building Supply, and Broadnax hired him without Magbee's involvement. Soon thereafter, Cox contacted Magbee and asked him to try to work out Cox's insurance

problem, and Cox began work for Building Supply in late December. Both Cox and Broadnax testified that they had been dissatisfied at Sash & Door, and that in the course of his recruitment of them Magbee made no negative statements concerning Sash & Door's operations or its financial status.

After Cox and Broadnax left Sash & Door, many of their customers followed them to their new employer. Troxel testified that as a result, Sash & Door suffered such a serious decline in sales that it ceased operations at the end of the first quarter of 1988. He and his accountant testified that Sash & Door suffered a net loss after liquidation of $432,000, and that Troxel personally lost almost $58,000 in income.

1. We first note that we have jurisdiction over the cross appeal (Case No. A90A2276) pursuant to *Marathon U. S. Realties v. Kalb*, 244 Ga. 390, 392-393 (260 SE2d 85) (1979), which stands for the proposition that a cross appeal may be taken from the denial of a motion for summary judgment.

2. Building Supply and Magbee, appellants in Case No. A90A2275, enumerate as error the trial court's denial of their motion for summary judgment on Sash & Door's tortious interference claim, contending they pierced Sash & Door's allegations as to essential elements of the claim. To establish a cause of action for tortious interference with contractual relations, a plaintiff must show that the defendant "(1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to . . . continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury." (Citations and punctuation omitted.) *Nationwide Adv. &c. v. Thompson Recruitment &c.*, 183 Ga. App. 678, 679-680 (359 SE2d 737) (1987).

The privilege of fair competition protects the actions of one who establishes a business in close proximity to a competitor or who solicits a competitor's at will employees provided the standards set forth in Restatement of Torts, § 768 are followed. *American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 348 (2) (392 SE2d 860) (1990).[1] Those standards are: "(1) the relation concerns a matter involved in the competition between the actor and the competitor; (2) the actor does not use improper means; (3) the actor does not intend thereby to create or continue an illegal restraint of competition; and (4) the ac-

---

[1] We note that *Pascoe* cites both *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662, 667 (1) (242 SE2d 135) (1978), which adopted the definition set forth in the first edition of the Restatement, and *E. D. Lacey Mills v. Keith*, 183 Ga. App. 357, 363 (10) (359 SE2d 148) (1987), which followed the second edition of the Restatement. This difference is noteworthy because in the first edition subsection (c), which deals with restraint of trade, includes the element of intent, whereas in the second edition the privilege applies only if the action " 'does not create or continue an unlawful restraint of trade.' " *E. D. Lacey*, supra.

tor's purpose is at least in part to advance its interests in competition with the other. [Cit.]" *Sofate of America v. Brown*, 171 Ga. App. 39, 40 (318 SE2d 771) (1984). Improper means "generally involve predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." *American Bldgs.*, supra at 349.

We find that the acts of Building Supply and Magbee fall within the scope of this privilege. Magbee and each of the employees who left Sash & Door testified that Magbee made no statements or representations concerning Sash & Door. Although there is some evidence that Cox contacted the customers he had serviced at Sash & Door, customer lists are not confidential information, and an employee is permitted to solicit his former customers on behalf of a new employer. *Nager v. Lad 'n Dad Slacks*, 148 Ga. App. 401, 402 (1) (251 SE2d 330) (1978). The affidavit testimony of Magbee, Cox, Broadnax, and Chadwick rebutted Sash & Door's allegations that there was a conspiracy to bring financial harm to it, as each testified that he intended only to advance his own career and business interests, Cox and Broadnax explained that they had been dissatisfied with Sash & Door's management and compensation policies, and the pattern of contacts between the three men and Building Supply does not suggest the existence of a plan or scheme designed to impair Sash & Door's financial position or induce breaches of employment contracts. See *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662 (242 SE2d 135) (1978); compare *Architectural Mfg. Co. v. Airotec, Inc.*, 119 Ga. App. 245 (1) (166 SE2d 744) (1969). Sash & Door has presented no specific facts to rebut this testimony other than Troxel's testimony that the contacts with the employees were made without his knowledge or consent, which does not place the conduct outside the privilege "to terminate . . . at-will employment, to engage in direct competition, to hire others who formerly worked for [another] employer, even to persuade them that [the competitor] offers better economic opportunity." *Airotec*, supra at 250-251 (2).

While on motion for summary judgment the respondent should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences therefrom in favor of the respondent, *Southern Business Machines &c. v. Norwest Fin. &c.*, 194 Ga. App. 253, 256 (390 SE2d 402) (1990), if the defendant-movant presents evidence to pierce an essential element of the claim, the plaintiff-respondent must respond with specific facts showing the existence of a genuine issue to be tried or suffer judgment against it. *Richard A. Naso & Assoc. v. Diffusion*, 194 Ga. App. 201, 204 (390 SE2d 106) (1990). Accordingly, Building Supply and Magbee having pierced an essential element of Sash & Door's claim, they were entitled to summary judgment, see id. at 204-205, and the trial court

erred by denying their motion.

3. Building Supply and Magbee also challenge the denial of their summary judgment motion on Troxel's individual claim for tortious interference. Pretermitting the question whether Troxel has standing to bring suit for alleged interference with the contractual relations of Sash & Door, we hold that the essential element of privilege also was pierced as to his claim for the reasons set forth in Division 2.

4. In Case No. A90A2276, Sash & Door and Troxel contend the trial court erred by denying their motion for summary judgment on the *Yost* counterclaim filed by Building Supply and Magbee. This court has established that a denial of a defendant's motion for summary judgment on the main claim constitutes a binding determination that the claim did not lack substantial justification so as to render it frivolous, groundless, or vexatious, and as a result the defendant is not entitled to an award of damages under *Yost* or OCGA § 9-15-14. *Felker v. Fenlason*, 197 Ga. App. 476, 477 (2) (398 SE2d 754) (1990). In *Colquitt v. Network Rental*, 195 Ga. App. 244, 246 (2a) (393 SE2d 28) (1990), we applied this rule to affirm the denial of *Yost* and OCGA § 9-15-14 damages even though the trial court's original denial of summary judgment had been reversed by the Supreme Court. The analysis in *Colquitt* is equally applicable here because, as was the case with the claim in *Colquitt*, the facts in each tortious interference claim are different and each case must be considered on its facts. Accordingly, we cannot say that Sash & Door and Troxel's claim "suffer[ed] from such a complete absence of justiciable issues of law and fact that no court would accept it [cits.]" id., and thus we reverse the denial of their motion for summary judgment. See *Felker*, supra.

*Judgments reversed. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 26, 1991 —
REHEARING DENIED MARCH 12, 1991 —

*Grizzard, Simons, Martin & Wills, Warren W. Wills, Jr., Dale C. Ray, Jr., Georgiana Rizk*, for appellants.

*E. Wycliffe Orr, Stewart, Melvin & House, J. Douglas Stewart*, for appellees.