A94A1637. VALDEZ v. POWER INDUSTRY CONSULTANTS,
INC. et al.
(451 SE2d 87)

SMITH, Judge.

Freddy Valdez filed this action seeking damages from Power Industry Consultants, Inc. ("PIC") and its president, James Flandreau, for tortious interference with business relations. A jury returned a verdict in favor of PIC, and Valdez appeals, contending the trial court erred in giving two erroneous jury charges and in failing to give two jury charges requested by Valdez. We agree that the jury instructions were erroneous and remand for a new trial.

In reviewing a jury instruction, we must determine if any evidence was presented at trial to support it. *Feathers v. Wilson,* 157 Ga. App. 753 (1) (278 SE2d 434) (1981). There was evidence presented at trial that Valdez is a technical consultant working primarily in the electrical power generating industry. PIC is a placement firm supplying consultants to the industry on a project-by-project basis. It charges its customers on an hourly basis for the consultants' services, and keeps a percentage of that hourly rate for its profit.

In 1988, Valdez contacted Flandreau seeking international employment, which enhances a consultant's marketability. Valdez signed an agreement with PIC for a specific job in Santo Domingo for General Electric ("GE"). The agreement was styled "International Defined Term Employment Agreement" and provided that Valdez would not seek work with PIC's client for one year after termination of the agreement. It also stated that the employment was for a particular service and terminated after completion of the agreement. The Santo Domingo job was cancelled at the last moment. Valdez never went to Santo Domingo, never performed any services, and never received any compensation under the agreement. However, Flandreau contended at trial that despite its language, the Santo Domingo contract was intended as a "master" agreement that remains in effect and is applicable to any subsequent placements by PIC whether domestic or foreign.

PIC also had a "master contract" with GE providing: "GE and Contractor [PIC] agree that neither will solicit any of the employees of the other for employment or hire, so long as this Contract is in effect and for one (1) year following termination, unless prior written consent to do so is obtained." Valdez was not a party to this agreement.

After several other attempts to place Valdez on several short-term jobs which were domestic rather than international, Valdez testified he obtained a full-time job in the United States without the assistance of PIC. He continued to seek international work independently of PIC, and approached GE with regard to one of several positions in China. In early 1990, he successfully negotiated with GE for a technical position on one of its projects in China; they reached a verbal agreement with the understanding that a written contract would be delivered by overnight express to Valdez's home in New Mexico.

Flandreau acknowledged Valdez was not an employee of PIC at the time he sought the China job, and that Valdez approached GE rather than GE soliciting Valdez. However, when Flandreau heard that Valdez was being hired by GE, he intervened in the contract negotations between GE and Valdez. He telephoned the GE employee involved in the hiring process and told him that GE was violating its master contract with PIC and engaging in illegal, wrongful, and unethical conduct. He also told the employee that GE was paying Valdez at too high a rate. Flandreau also faxed a copy of the Santo Domingo agreement to the same employee, adding a handwritten note that Valdez was bound by the agreement because Valdez had worked within the year for several weeks with GE in Oklahoma. As a result of this conversation and fax, GE broke off its negotiations with Valdez, and he did not obtain the China position.

1. Valdez contends the trial court erred in charging the jury on the "competition privilege" established in *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662 (242 SE2d 135) (1978). This privilege constitutes a defense to a claim of interference with contractual relations where (a) the relation concerns a matter involved in the competition between the actor and the competitor; (b) the actor does not employ improper means; (c) the actor does not intend thereby to create or continue an illegal restraint of competition; and (d) the actor's purpose is at least in part to advance its interests in its competition with the other. 240 Ga. at 666. The *Orkin* court, however, applied this privilege as between two pest control companies engaged in the same business, performing the same activities for their customers, and competing for the same customers or employees. Cases relying upon *Orkin* have limited the scope of the privilege in the same fashion. See *American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 348-349 (2) (392 SE2d 860) (1990) (two prefabricated building manufacturers competing for same employees); *Contractors' Bldg. Supply v. Gwinnett Sash & Door*, 199 Ga. App. 38, 40 (2) (403 SE2d 844) (1991) (two competing building supply companies); *Nationwide Advertising Svc. v. Thompson Recruitment Advertising*, 183 Ga. App. 678, 680-681 (1) (359 SE2d 737) (1987) (two competing advertising agencies). PIC urges the application of *Local 472 &c. v. Ga. Power Co.*, 684 F2d 721

(11th Cir. 1982), which cites *Orkin*. Because that case is factually and legally distinguishable, we decline to consider it. It involved a dispute between a labor union and an employer, applying federal common law and the Labor Management Relations Act, 29 USC §§ 185, 186 (a), and has no application here.

The trial court's charge of the competition privilege was inapplicable to the facts of this case. Valdez is not a "competitor" of PIC. He is not in the job placement or personnel business. He is seeking personal employment in his field of expertise. The irrelevance of the competition privilege here is supported by the language of *Orkin* itself, which notes the strong public interest in "the free movement of employees in the marketplace as opportunity, experience and competition permits." *Orkin* at 667. Interpretation of the privilege as PIC suggests would run directly counter to the stated public interest and reverse the intended effect, turning the shield of the competition privilege into a sword for driving former employees from their chosen field. An employee cannot be prevented from employing the skills and knowledge obtained in the course of employment; a properly drafted and limited non-competition or non-disclosure agreement, not the *Orkin* privilege, is the appropriate method for protecting the business interests of PIC. *American Bldgs. Co.*, supra, 260 Ga. at 350 (3).

A charge unauthorized by the evidence, which injects into the case issues not made by the pleadings or evidence, is presumed to be harmful to the losing party, and such a charge is grounds for new trial unless it is apparent that the jury could not have been misled by it. *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860, 862 (2) (389 SE2d 355) (1989). In the present case, the charge could have confused and misled the jury by giving PIC and Flandreau a defense to which they were not entitled. *Avant Trucking Co. v. Stallion*, 159 Ga. App. 198, 201 (2) (283 SE2d 7) (1981). The trial court therefore erred in denying Valdez's motion for new trial.

2. Valdez next contends the trial court erred in giving PIC's requested charge on good faith as an absolute defense to a claim of tortious interference. PIC relies upon two federal district court decisions to support the proposition embodied in the requested charge on good faith. *Sweeney v. Athens Regional Med. Ctr.*, 709 FSupp. 1563 (M.D. Ga. 1989); *Carolina Furniture Co. v. Rhodes, Inc.*, 603 FSupp. 69 (S.D. Ga. 1984). Assuming without deciding that these cases contain a correct summary of Georgia law, neither of them involves the propriety of jury instructions. *Sweeney* declined to rule on the issue of malice in the context of summary judgment and reserved it for jury consideration. 709 FSupp. at 1578. The statement in *Carolina Furniture* is part of the trial court's findings of fact and conclusions of law at a bench trial. 603 FSupp. at 77. " '(L)anguage which would be proper in a headnote or in the opinion by a reviewing court may be improper

when embodied in a charge to a jury. . . .' " *Blount v. Moore*, 159 Ga. App. 80, 82 (1) (282 SE2d 720) (1981). This is equally true of language used by a federal trial court on summary judgment or at a bench trial.

"To support a verdict for tortious interference with business relations the evidence must show the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury." (Citations and punctuation omitted.) *Arford v. Blalock*, 199 Ga. App. 434, 440 (13) (405 SE2d 698) (1991), aff'd sub nom. *Wilensky v. Blalock*, 262 Ga. 95 (414 SE2d 1) (1992). Subjective good faith, standing alone, is not an absolute defense to a claim of tortious interference with business relations, just as "malice" within the meaning of such a claim need not be prompted by bad faith or personal dislike. " 'The term "malicious" or "maliciously" means any unauthorized interference, or any interference without legal justification or excuse. Personal ill will or animosity is not essential.' [Cit.]" *Arford* at 441; *Forehand v. Perlis Realty Co.*, 198 Ga. App. 165, 166 (400 SE2d 644) (1990).

A party may have a personal, subjective justification or excuse which does not amount to that *legal* justification or excuse required under the law.[1] For example, a party might contend that he acted in subjective "good faith" in misunderstanding or misinterpreting the plain language of a contract drafted by him or on his behalf. Ignorance of the law, however, excuses no one, *Jabaley v. Jabaley*, 208 Ga. App. 179, 180 (1) (430 SE2d 119) (1993), and cannot amount to "legal" justification or excuse. The charge incorrectly characterized as a complete defense that which is only a defense under particular circumstances, and it may have misled the jury on this point. It therefore was error to give it. See generally *Roswell Properties v. Salle*, 208 Ga. App. 202, 208 (10) (430 SE2d 404) (1993).

3. In Valdez's remaining enumerations of error, he contends the trial court erred in failing to give his requested charges on improper purpose and justification. "If any portion of a requested charge is inapt, incorrect, misleading, confusing, argumentative, not precisely adjusted or tailored, or not reasonably raised or authorized by the evidence, denial of the charge request is proper." (Citations and punctuation omitted.) *Stinson v. Allstate Ins. Co.*, 212 Ga. App. 179, 182 (2) (a) (441 SE2d 453) (1994). The language of the requested

---

[1] Indeed, the trial court omitted the word "legal" from its general charge on tortious interference with business relations: "In Georgia the term malice with respect to a cause of action for tortious interference with business relations is defined as an unauthorized interference or an interference without justification or excuse."

charges was argumentative, constituted an impermissible comment on the evidence, and arguably invaded the province of the jury in directing a finding of fact. Moreover, the trial court gave the substance of both requested charges. *Mattox v. MARTA*, 200 Ga. App. 697, 699 (2) (409 SE2d 267) (1991). The trial court did not err in refusing to give Valdez's requested charges numbered 22 and 23.

*Judgment reversed and remanded. Pope, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 17, 1994 —
RECONSIDERATION DENIED DECEMBER 5, 1994 —

*Charles M. Goetz, Jr., Philippa V. Tibbs,* for appellant.
*Freeman & Hawkins, Warner S. Fox,* for appellees.