A89A0798. PERFECT IMAGE, INC. v. M & M ELECTRICAL
CONSTRUCTORS, INC.
A89A0799. DIODATI v. PERFECT IMAGE, INC.
(382 SE2d 405)

BANKE, Presiding Judge.

M & M Electrical Constructors, Inc., (hereafter referred to as M
& M) brought suit against Perfect Image, Inc., to collect an account
indebtedness allegedly owed by Perfect Image for services rendered.
Perfect Image denied liability but also filed a third-party complaint
against Ray L. Diodati, d/b/a R & R Developers, seeking to hold him
liable for any recovery which M & M might obtain in the main action.
The case was tried before a jury, which returned a verdict in favor of
M & M and against Perfect Image for the entire principal amount
sought in the complaint, plus interest and attorney fees. On the third-
party claim, the jury returned a verdict in favor of Perfect Image and
against Diodati, but only to the extent of the principal and interest
awarded to M & M. Perfect Image appeals from the judgment entered
on the former portion of the jury's verdict, while Diodati appeals from
the judgment entered on the latter portion.

Perfect Image had leased certain premises from Diodati on which
to operate a commercial printing business. Diodati was required by
the terms of the lease to make certain specified improvements to the
premises to prepare them for occupancy by Perfect Image. The presi-
dent of Perfect Image, Norman Friedman, was particularly concerned
about certain specialized electrical work required for the operation of
his printing equipment, and he consequently obtained Diodati's per-
mission to "handle the electrical work and get the bids and supervise
[this] work himself. . . ." One of the electrical contractors from
which Friedman solicited a bid was M & M, which specialized in per-
forming electrical work for the printing industry and had evidently
performed satisfactory work for Perfect Image in the past. M & M's
bid was too high, however; and a company known as H & S Electrical
Plumbing, Inc. (hereinafter referred to as H & S) was ultimately hired
to do that portion of the electrical work which was the landlord's re-
sponsibility under the plans and specifications referenced by the
lease. However, M & M was separately hired by Friedman to do cer-
tain additional electrical work which was necessary to get his com-
pany's printing equipment installed and working.

While electricians from both M & M and H & S were on the job
site performing their respective tasks, Friedman encountered an elec-
trical problem involving the wiring to a computer. He summoned an
H & S employee to examine the wiring and was assured by that em-
ployee that the wiring was correct. Doubting that assessment, Fried-
man went to Diodati and requested his permission to have an M & M
employee look into the problem. Diodati agreed, telling Friedman to

"have them check it and fix it and send me the bill. . . ." There was evidence that, during a subsequent discussion, Diodati told Friedman that if his electrician "found anything [else] wrong with my electrician's work to go ahead and correct it and I would pay him." In connection with these instructions, Diodati additionally told Friedman that he (Diodati) was withholding a $4,000 retainage against H & S which could be used to cover the expense of such corrective work.

In the ensuing weeks, M & M's electricians replaced or altered much of the wiring which had been installed by H & S. Friedman, who was present at the job site throughout this period, testified that M & M's supervisor approached him so frequently to discuss this work that he told him: "[B]asically I'm busy. Don't come walking in my office. If it's a violation of the plans and specifications, fix it. If it's a violation of the [electrical] code that you can justify, fix it. Otherwise, don't; and keep your records separate." Friedman stated that, notwithstanding this admonishment, the supervisor "never did not (sic) stop coming in — he did not stop bothering me about that. He would continually come in. After a week or so it would be kind of once or twice a day situation where he said these are the things we are going to do today."

After about three weeks of this, Friedman decided to talk to Diodati about the potential expense of M & M's corrective work because, in his words, he "had an uneasy feeling that maybe [Diodati] didn't realize how much work was being done." According to Friedman, Diodati responded by telling him not to worry because he was also withholding a retainage against H & S on another job H & S was doing for him.

M & M ultimately submitted an itemized invoice to Friedman for the repair and replacement work it had done on H & S's installations, and Friedman forwarded the bill to Diodati with a cover letter asking him to pay it. Diodati testified that he was surprised by the amount of the invoice and contacted M & M's president directly to tell him he thought it was too high. The resulting impasse gave rise to the present litigation. *Held*:

1. Perfect Image contends that because there was no proof that the corrective work performed by M & M was in fact necessary to correct wiring installed by H & S which was not in compliance with the applicable electrical code or with the plans and specifications incorporated into the lease, there was no basis upon which the jury could have found either that the work had been authorized by Perfect Image or that Perfect Image had received anything of value as the result of it. We find this contention to be without merit. Friedman admitted that he had employed M & M and that M & M's electricians had contacted him "every day, two or three times a day, reporting . . . what they had done and were doing." The jury could reasona-

bly have concluded from the evidence that Friedman had authorized M & M to perform all of the work in question. Accordingly, the trial court did not err in denying Perfect Image's motion for directed verdict in the main action.

2. Perfect Image contends that there was no basis for an award of attorney fees for stubborn litigiousness pursuant to OCGA § 13-6-11 because there was a bona fide dispute as to whether M & M had exceeded its general authorization to correct code violations and variances from the plans and specifications. As indicated in Division 1, supra, it is apparent without dispute that Friedman was kept fully apprised of the nature of the work M & M's electricians were performing. It is further apparent from his testimony that he was aware M & M's bill would be substantial. Indeed, Friedman testified that he had no quarrel with the amount of M & M's bill when he received it and would have paid it but for his belief that, as between the two of them, Diodati was responsible for the work. Under the circumstances, the jury could reasonably have concluded that there was no bona fide controversy regarding whether Personal Image was indebted to M & M for payment of the account. "There being some evidence authorizing the award of attorney fees, this court cannot say as a matter of law that there was a reasonable defense to the main claim. (Cits.)" *Jackson v. Brinegar, Inc.*, 165 Ga. App. 432, 436 (301 SE2d 493) (1983).

3. Diodati contends that the trial court erred in denying his motion for directed verdict on the third-party claim because there was no evidence that a principal-agent relationship existed between himself and Friedman pursuant to which Friedman would have been authorized to bind him to a contractual obligation to M & M. We disagree. Diodati acknowledged that it was Friedman's responsibility to supervise the electrical work, stating: "He was acting at my request. He requested that he be able to handle the electrical work and get the bids and supervise the work himself, and I consented to it." Diodati further testified that he had gone onto the premises several times during the period the corrective work was being performed, that he had observed M & M's electricians working there, and that he had reminded them to keep separate bills for the work they were doing for him. It could reasonably be inferred from this testimony, as well as from other testimony in the case, that Diodati was aware of the substantial nature of the corrective work which was being performed.

In reviewing the denial of a motion for directed verdict, the evidence is always to be construed in favor of the party opposing the motion. *Francis v. Cook*, 248 Ga. 225 (1) (281 SE2d 548) (1981). Similarly, where a verdict has been returned by the jury and approved by the trial judge, the evidence is to be construed in the light most favorable to the prevailing party, and every presumption and infer-

ence is in favor of sustaining the verdict. *Suber v. Fountain*, 151 Ga. App. 283, 285 (259 SE2d 685) (1979). Construed in such fashion, the evidence in the present case authorized a finding that Diodati had authorized Friedman to direct M & M's employees to perform the work in question.

4. Diodati further contends that he was entitled to a directed verdict based on a provision in the lease specifying that the tenant was not authorized to make alterations, repairs, or improvements without the prior written consent of the landlord. We also find this contention to be without merit. The jury was authorized to conclude that the corrective work performed by M & M was being performed for the purpose of preparing the premises for occupancy, that Diodati was aware of the ongoing and substantial nature of the work, and that neither party considered this work to be covered by the lease provision in question.

5. The discretion to set aside a verdict on the ground that it is decidedly and strongly against the weight of the evidence or is contrary to the principles of justice and equity rests solely with the trial judge, and the appellate courts are not vested with such discretion. *Gledhill v. Brown*, 44 Ga. App. 670, 671 (1) (162 SE 824) (1931); *Southern R. Co. v. Garner*, 101 Ga. App. 371, 373 (114 SE2d 211) (1960). See generally OCGA §§ 5-5-20; 5-5-21. Consequently, Diodati's final enumeration of error presents nothing for review.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED MAY 19, 1989.

*Johnson & Montgomery, Nisbet S. Kindrick III*, for Perfect Image.

*Charles H. Edwards*, for M & M Electrical.

*Rogers, Magruder, Hoyt, Sumner & Brinson, James P. Orr*, for Diodati.