A90A1886, A90A1890. ARFORD v. BLALOCK; and vice versa.
A90A1887. BLALOCK v. WILENSKY.
A90A1888, A90A1889. GULF STATES MORTGAGE COMPANY, INC. v. BLALOCK; and vice versa.
(405 SE2d 698)

POPE, Judge.
In 1982 Eulas Blalock and Anthony Arford commenced a mortgage banking business operating under the name of Gulf States Mortgage Company. Conflicting evidence was presented concerning whether Blalock and Arford established a partnership which was engaged as an independent contractor by the corporation Gulf States Mortgage Company, Inc., pursuant to an oral franchise agreement, or whether Blalock and Arford were hired by oral agreement as employ-

ees to serve as co-managers of a branch office of the corporation. In either circumstance, the record reflects that Blalock and Arford jointly owned the building and office furniture which were leased from them by the corporation. The verdict shows the jury found a partnership existed between Blalock and Arford and that the partnership was an independent contractor of the corporation.

Blalock and Arford were financially successful and the enterprise continued to grow until early 1987, when the two had some disagreements and discussed severing their business relationship. On February 11, 1987, Robert Wilensky, president of the corporation, informed Blalock his relationship with Gulf States was terminated but the corporation continued conducting business with Arford. The locks on the building were changed so that Blalock no longer had unsupervised access to it, but from the time his business relationship with the corporation was terminated to the date of the trial of this case, Blalock regularly received his portion of the lease payments for the building and furniture, as lessor.

Blalock filed an action against Arford, Wilensky and Gulf States Mortgage Company, Inc. The case was tried and judgment was entered on the jury verdict against Arford in the amount of $800,000 for breach of the partnership contract and $80,000 for attorney fees and against Gulf States in the amount of $200,000 for breach of its contract with the partnership and $80,000 for attorney fees. The jury also returned a verdict against Wilensky, individually, in the amount of $200,000 for tortious interference with business relations and one million dollars punitive damages, but the trial court granted Wilensky's motion for judgment notwithstanding the verdict. Several appeals have been filed from the judgments in this case, and we have consolidated them for review.

### Case No. A90A1888

This appeal was brought by Gulf States, which asserts the trial court erred in denying its motion for judgment notwithstanding the verdict on Blalock's claim that he was entitled to damages for Gulf States' alleged breach of contract with the Blalock-Arford partnership.

1. Gulf States argues Blalock is precluded from recovering for breach of contract with the partnership because an action on behalf of a partnership can only be brought by the partnership as a whole and not by one partner, individually. "A real-party-in-interest objection is similar to the defense of failure to join an indispensable party under OCGA § 9-11-19 and may be made at any time up to and including a trial on the merits." (Citation and punctuation omitted.) *Rome Housing Auth. v. Allied Bldg. Materials*, 182 Ga. App. 233, 237

(2) (355 SE2d 747) (1987). The issue is waived where, as here, it is raised for the first time in a post-trial motion. Id.

2. However, we agree Blalock, suing for the partnership, had no cause of action against Gulf States for breach of contract. "An indefinite hiring may be terminated at will by either party." OCGA § 34-7-1. Even a "franchised contractual relationship," when it consists of an oral agreement for an indefinite period, is terminable at will. *Atlanta Dairies Co-op. v. Grindle*, 182 Ga. App. 409 (1) (356 SE2d 42) (1987). See also *Richard A. Naso & Assoc. v. Diffusion*, 194 Ga. App. 201 (390 SE2d 106) (1990). Thus, the trial court erred in denying the motion for judgment notwithstanding the verdict.

3. Although Blalock had no claim for wrongful termination of either himself, individually, or the partnership, he did have a claim for unpaid compensation due him, as one of the partners, for services actually performed up to the time of his discharge. See *Atlanta Dairies Co-op. v. Grindle*, supra at (2). However, the only competent evidence of damages presented by Blalock was the testimony of an expert witness concerning his evaluation of the partnership as an on-going concern, including his projection of future earnings of the partnership. Because a hiring for an indefinite period is terminable at will it creates no executory obligations. *Murphine v. Hosp. Auth. of Floyd County*, 151 Ga. App. 722 (261 SE2d 457) (1979). Thus, Blalock is not entitled to recover an award for future earnings.

Blalock's compensation was based on origination fees earned by the partnership for mortgage applications solicited by the partnership and accepted and closed by Gulf States. The record reflects that mortgage applications were "in the pipeline," that is, in the process of being approved and closed, at the time Blalock was terminated. Blalock could recover the income due him from the origination fees for these mortgages. However, the only evidence of the value of those mortgages was the estimate Blalock testified he made at the time of his termination based on the record of previous months. No evidence was presented at trial to show how many mortgage applications were actually "in the pipeline" at the time of termination nor the value of those mortgages which eventually closed. Where no competent evidence is presented on the only true measure of damages to the plaintiff, then the verdict is unsupported by the evidence and the judgment must be reversed. *Department of Transp. v. Kirk*, 138 Ga. App. 180 (2 & 3) (225 SE2d 781) (1976). This is not a case in which the verdict and judgment can be upheld by the general rule that, on appeal, every inference and presumption is in favor of sustaining the verdict (see, e.g., *Perfect Image, Inc. v. M & M Elec. Constructors*, 191 Ga. App. 605 (3) (382 SE2d 405) (1989)), because here no evidence was presented on the only proper measure of damages available for plaintiff's cause of action.

4. Gulf States was also entitled to judgment in its favor on the award of attorney fees. "Expenses of litigation are not recoverable pursuant to OCGA § 13-6-11 unless other elements of damages are recoverable. [Cits.] Since [Gulf States is entitled to judgment] on . . . the . . . substantive [count] of [plaintiff's] complaint, it necessarily follows [it] is also entitled to . . . judgment on the claim for attorney fees." *Connell v. Houser*, 189 Ga. App. 158, 160 (5) (375 SE2d 136) (1988). In light of our holding that Gulf States was entitled to judgment notwithstanding the verdict, we need not address its remaining enumeration of error in which it argues it is entitled to new trial because of an asserted error in the jury instructions.

### Case No. A90A1889

5. We have reviewed the enumerations of error raised by Blalock on cross-appeal of Gulf States' appeal and find no ground for reversible error which would require a new trial instead of judgment notwithstanding the verdict, as held above.

### Case No. A90A1886

This appeal is brought by Arford who asserts the trial court erred in denying his motion for judgment notwithstanding the verdict on Blalock's claim that he is entitled to damages for the alleged breach of the partnership agreement between the two men.

6. The evidence presented in support of Blalock's contention that Blalock and Arford conducted the business in question as a partnership shows the agreement was oral and for an indefinite duration and was, therefore, terminable at will. A partnership may be dissolved by the express will or withdrawal of any partner. OCGA § 14-8-31 (a) (2). Arford argues he had a right to terminate the partnership and cannot be liable for breach of contract. Blalock argues Arford's termination of the partnership was a breach of contract but, curiously, cites as authority the Uniform Commercial Code, which we hold has no application to this case, and cites no authority from the Georgia Uniform Partnership Act which governs the rights of partners in the dissolution of a partnership.

Although Blalock does not refer to it as such, his cause of action is essentially one for wrongful dissolution of the otherwise terminable-at-will partnership. OCGA § 14-8-38 (b) refers to wrongful dissolution as a dissolution made "either in contravention of the partnership agreement or as a result of other wrongful conduct of a partner . . . ." Any partnership agreement includes, as a matter of law, an agreement for each partner to act in "the utmost good faith" toward the other partner. See OCGA § 23-2-58; *Allen v. Sanders*, 176 Ga. App. 647 (1) (337 SE2d 428) (1985). The power of a partner to dis-

solve the partnership at will, "like any other power held by a fiduciary, must be exercised in good faith. . . . A partner may not . . . 'freeze out' a co-partner and appropriate the business to his own use. A partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his co-partner for his share of the prospective business opportunity. . . . [Even though a partner has a right to dissolve the partnership, i]f, however, it is proved that [the partner] acted in bad faith and violated his fiduciary duties by attempting to appropriate to his own use the new prosperity of the partnership without adequate compensation to his co-partner, the dissolution would be wrongful and the [partner] would be liable as provided by [the section of the Uniform Partnership Act defining the rights of partners upon wrongful dissolution] for violation of the implied agreement not to exclude [the other partner] wrongfully from the partnership business opportunity." *Page v. Page*, 359 P2d 41, 44-45 (Cal. 1961). Although the evidence was conflicting, Blalock presented evidence from which the jury could find Arford wrongfully dissolved the partnership to "freeze out" Blalock from further business opportunities with Gulf States. Therefore, the lower court did not err in denying Arford's motion for judgment notwithstanding the verdict.

7. Arford also argues the award of damages was improper because the only remedy available to Blalock for the dissolution of the partnership is an accounting and payment of net assets owed to him as a one-half partner in the now-dissolved partnership. A partner who has been "wrongfully excluded from the partnership business" has a right to a formal accounting. OCGA § 14-8-22 (1). See also OCGA § 14-8-43. The original complaint included a count demanding an accounting but, for reasons known only to Blalock's attorneys, Blalock announced after the close of plaintiff's evidence that the claim for an accounting was no longer a part of the case. In the case of wrongful dissolution of a partnership, however, a partner who did not wrongfully cause the dissolution is entitled not only to payment for his net interest in the partnership (which would be calculated pursuant to an accounting) but also damages for wrongful dissolution. OCGA § 14-8-38 (b). We find instructive the holding by the California Supreme Court in *Page v. Page*, supra, that damages for wrongfully excluding a partner from a partnership business opportunity should include compensation to the ousted partner for his share of the prospective business opportunity.

In this case, Blalock presented the testimony of an expert witness concerning his estimate of Blalock's lost share of partnership profits. We reject Arford's argument that the testimony of Blalock's expert witness was not competent evidence of the proper measure of damages in this case. "A partner's interest in the partnership is his share

of the profits and surplus. . . ." OCGA § 14-8-26. Profits, of course, means net, and not gross, income. We find no error in admitting the testimony of Blalock's expert witness which was based on Blalock's past income from the business since evidence was presented that expenses and liabilities were subtracted from gross income before Blalock was paid.

8. We also reject Arford's argument that no causal connection was shown between the dissolution of the partnership and Blalock's loss of future earnings because, Arford argues, Gulf States independently terminated its relationship with the partnership and chose, instead, to do business with Arford, individually. The jury's verdict against Wilensky, the president of Gulf States, on Blalock's claim for tortious interference with business relations (addressed in Case No. A90A1887, below), shows the jury concluded the termination of the Blalock-Arford partnership and Wilensky's termination of Gulf States' relationship with Blalock were interrelated.

9. As discussed in Division 6, above, evidence was presented from which the jury could find Arford's dissolution of the partnership was wrongful and in bad faith. The issue of attorney fees under OCGA § 13-6-11 is a question for the jury and an award will be upheld if any evidence is presented to support the award. *Spring Lake Property Owners Assn. v. Peacock*, 260 Ga. 80 (390 SE2d 31) (1990). Thus, we reject Arford's argument that Blalock was not entitled to an award of attorney fees.

10. Finally, Arford argues the trial court erred in denying his motion for judgment notwithstanding the verdict because the amount of attorney fees awarded is legally insupportable. The expert witness who testified concerning the reasonableness of Blalock's claim for attorney fees testified only in regard to the reasonableness of the total number of hours spent by Blalock's attorneys in representing him in the case. He admitted he did not calculate how many hours of the total time spent on the case were spent on certain claims alleged in the original complaint which were disposed of before trial by summary judgment in favor of Gulf States.

Attorney fees could be recovered against Arford because the verdict form shows the jury found Arford acted in bad faith. A plaintiff, however, is entitled to recover attorney fees only for that portion of the fees which are allocable to the attorney's efforts to prosecute the cause of action, against a particular defendant, on which the prayer for attorney fees is based. See *Fuller v. Moister*, 248 Ga. 287 (282 SE2d 889) (1981); *Altamaha &c. Center v. Godwin*, 137 Ga. App. 394, 399 (3) (224 SE2d 76) (1976). No evidence was presented from which the jury could determine what portion of the total amount of attorney time and litigation expenses incurred in this multi-count, multiple-defendant litigation was attributable to the particular claim against

Arford. Consequently, Arford was entitled to judgment notwithstanding the verdict as to that portion of the verdict awarding attorney fees. See *Mutual Fed. Savings &c. Assn. v. Johnson,* 124 Ga. App. 68 (2) (183 SE2d 50) (1971); *State Mut. Ins. Co. v. McJenkin &c. Co.,* 86 Ga. App. 442, 447 (3) (71 SE2d 670) (1952).

11. We find no error in the trial court's refusal to instruct the jury on defendants' requested charges on estoppel.

### Case No. A90A1890

12. Because we herein uphold the trial court's denial of Arford's motion for judgment notwithstanding the verdict and motion for new trial, we need not address the issues raised in Blalock's cross-appeal to Arford's appeal.

### Case No. A90A1887

13. This appeal is brought by Blalock who argues the trial court erred in granting Wilensky's motion for judgment notwithstanding the verdict of $200,000 actual damages and one million dollars punitive damages awarded by the jury. We agree with Blalock and reverse the trial court, holding that the jury verdict must be reinstated.

Blalock alleged in his complaint that Arford and Wilensky conspired to interfere wrongfully with his business relations. That the jury returned a verdict in favor of defendant Arford on this count, but against defendant Wilensky, does not invalidate the verdict against Wilensky. One who maliciously procures another to break a contract with the plaintiff is a joint tortfeasor and may be sued either alone or jointly with the actor. *Luke v. DuPree,* 158 Ga. 590 (1) (124 SE 13) (1924). The jury in this case imposed damages against Arford for wrongful dissolution of the partnership. A verdict against Arford on the tortious interference count of the complaint would arguably have granted an impermissible double recovery for a single injury.

To support a verdict for tortious interference with business relations the evidence must show the defendant "(1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury." (Citation and punctuation omitted.) *Integrated Micro Systems v. NEC Home Electronics (USA),* 174 Ga. App. 197, 200 (3) (329 SE2d 554) (1985). The record shows sufficient evidence was presented to permit the jury to find each of the elements listed above.

*Improper act.* Construing, as we must, the evidence in the light most favorable to the verdict, it is obvious the jury believed Wilensky induced Arford wrongfully to dissolve his partnership with Blalock.

Contrary to Wilensky's argument, this act was not privileged. " 'The fact that [a business relationship] is at the will of the [parties] does not make it one at the will of others, and a malicious and wrongful interference with such [relationship] by another is actionable although the [relationship] be at will.' " *Architectural Mfg. Co. v. Airotec, Inc.*, 119 Ga. App. 245, 248 (166 SE2d 744) (1969). Even though Gulf States had a right or privilege to terminate at will its relationship with the partnership and, consequently, its relationship with Blalock as a partner in that partnership, the allegation of wrongdoing related to the relationship between Arford and Blalock, not Blalock's relationship with Gulf States.

*Malicious intent.* "The term malicious, used in this connection is to be given a liberal meaning. The act is malicious when the thing done is with the knowledge of plaintiff's rights, and with the intent to interfere therewith." (Citation and punctuation omitted.) Id. at 250. "[T]he term 'malicious' or 'maliciously' means any unauthorized interference, or any interference without legal justification or excuse. Personal ill will or animosity is not essential." *Luke v. DuPree,* supra at 596-597. Persuading a person to break a contract for the indirect purpose of injuring the plaintiff or benefiting the defendant at the expense of the plaintiff is a malicious and actionable act if injury arises from it. *Architectural Mfg. Co. v. Airotec, Inc.,* supra at 249. Although the existence of a partnership between Arford and Blalock was disputed, evidence was presented from which the jury could find that Wilensky knew of the partnership and thus knew that the dissolution of the partnership, when Gulf States intended to continue doing business with Arford, would "freeze out" Blalock from the benefits of his business relationship with Arford. The elements of *inducement of a third party* and *financial injury* are addressed above.

We reject Wilensky's contention that he could not be held individually liable for the act of tortious interference. " '[A]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, but an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein.' [Cit.]" *Lincoln Land Co. v. Palfery,* 130 Ga. App. 407, 411 (203 SE2d 597) (1973). Here, sufficient evidence was presented that Wilensky took part in the tort. See *American Game &c., Inc. v. Knighton,* 178 Ga. App. 745 (1) (344 SE2d 717) (1986). Wilensky's reliance on *Energy Contractors v. Ga. Metal Systems &c.,* 186 Ga. App. 475 (4) (367 SE2d 324) (1988), is misplaced; the reason the individual corporate officer could not be held liable in that case is because the evidence showed he was acting only as an agent of the corporation and he

could not be liable under a theory of derivative liability for the corporation because the corporation was a party to the contract in question and, by definition, could not be liable for interfering with relations with a third party. Here, the business relationship at issue is the partnership between Blalock and Arford and both Wilensky and Gulf States were third parties to that relationship.

The record shows Arford met with Wilensky to discuss the possible dissolution of his business relationship with Blalock and Wilensky told Arford he no longer wanted to do business with Blalock, but that nothing would change in Gulf States' relationship with Arford. Only after this discussion did Arford discuss with Blalock any specific proposals for dissolving the partnership or did Wilensky inform Blalock he was terminated from his relationship with Gulf States. Since, as discussed above, there was evidence from which the jury could find Wilensky knew Arford and Blalock were partners in their enterprise with Gulf States and that terminating Blalock while retaining Arford would effectively "freeze out" Blalock from an enterprise that would essentially be the continuation of the original partnership, we conclude the record contains sufficient circumstantial evidence to permit the jury to find Wilensky liable for tortious interference with Blalock's relationship with Arford. Cf. *Richard A. Naso & Assoc. v. Diffusion*, supra.

*Judgments affirmed in Case Nos. A90A1889 and A90A1890. Judgment affirmed in part and reversed in part in Case No. A90A1886. Judgments reversed in Case Nos. A90A1887 and A90A1888. Beasley and Andrews, JJ., concur.*

DECIDED MARCH 14, 1991 —
REHEARINGS DENIED MARCH 29, 1991 — 

*Chilivis & Grindler, Gary G. Grindler, Daniel P. Griffin*, for Arford.

*Decker & Hallman, Richard P. Decker, Peter V. Hasbrouck*, for Blalock.

*Gingold, Kaufman & Chaiken, Robert J. Kaufman, Fredric Chaiken*, for Wilensky.

*Kilpatrick & Cody, Laurel J. Lucey, A. Stephens Clay, Caroline W. Spangenberg*, for Gulf States Mortgage.