## S91G1033. WILENSKY v. BLALOCK.
## S91G1034. ARFORD v. BLALOCK.
### (414 SE2d 1)

BENHAM, Justice.

Blalock and Arford were partners in various enterprises for several years. The last business they conducted together was mortgage banking, under the name Gulf States Mortgage Company. They used that name pursuant to an agreement with Gulf States Mortgage Company, Inc. (Gulf States), of which Wilensky was an officer. Blalock and Arford made their money originating mortgages; Gulf States made money by servicing them. After several years, disputes arose, culminating in Blalock being excluded from the business. Blalock sued Arford, Wilensky, and Gulf States, getting a verdict against all three, but the trial court granted judgment notwithstanding the verdict to Wilensky. On appeal, the Court of Appeals affirmed the judgment against Arford for breach of the partnership agreement, but reversed the award of attorney fees because the evidence did not show how much of the litigation expenses were attributable to the claim against Arford; reversed the judgment against Gulf States, holding that since the agreement between Gulf States and the Arford-Blalock partnership was terminable at will, there could be no liability for terminating it; and reversed the judgment notwithstanding the verdict for Wilensky, holding that the evidence supported an award against him as an individual for interfering with Blalock's contractual relation, i.e., partnership, with Arford. *Arford v. Blalock*, 199 Ga. App. 434 (405 SE2d 698) (1991). We granted Wilensky's and Arford's petitions for certiorari to consider whether the evidence at trial sustained the causes of action on which the judgments were based.

### Case No. S91G1033

1. Throughout the appellate process, Wilensky has insisted that the issue of his alleged interference with Blalock's contractual relations concerned only Blalock's contractual relation with Gulf States. In support of that position, Wilensky relies on the pretrial order and has repeatedly quoted the pretrial order as framing the issue of tor-

tious interference in the following fashion:

> whether Defendants Arford and Wilensky conspired to inter-
> fere and have, in fact, tortiously interfered with and deprived
> Plaintiff [Blalock] of his valuable business relationship with
> Gulf States . . .

However, had Wilensky completed the sentence from which the quote
was taken, it would be seen to include the partnership relation by its
conclusion with the words, "and deprive Plaintiff of access to and the
use of partnership assets, accounts, and good will." When that com-
pleted sentence from the pretrial order is "liberally construed to allow
the consideration of all questions fairly within the ambit of the con-
tested issues" (*Cooper v. Rosser*, 232 Ga. 597, 598 (207 SE2d 513)
(1974)), and is considered together with the verdict form, which sepa-
rated Wilensky and Arford for purposes of the tortious interference
claim, it is clear that the jury was authorized to decide whether Wi-
lensky's conduct with regard to the partnership relation between Bla-
lock and Arford constituted a tortious interference with that relation.

2. The Court of Appeals at 199 Ga. App. 440-441, discussed the
elements of intentional interference with business relations and con-
cluded that the evidence at trial established those elements. We agree
with that analysis. The evidence on Blalock's behalf was that Wilen-
sky, knowing of the existence of discord in the Blalock-Arford part-
nership, encouraged Arford to terminate the partnership and to retain
both the material assets of the partnership and its business relation-
ship with Gulf States. Blalock also presented evidence that, in fur-
therance of that plan, Wilensky purported to "fire" Blalock from Gulf
States, even though Wilensky knew Blalock was not an employee; or-
dered Blalock from the office building in which both entities main-
tained their offices, threatening to have Blalock physically removed;
and advised Arford to have the locks on the building changed so that
Blalock could not return without permission. Although Wilensky gave
testimony conflicting with Blalock's, it is clear from the jury's verdict,
especially its finding of the existence of a partnership which Wilensky
had sworn did not exist, that it found Wilensky not to be worthy of
belief.

Wilensky contends that even if the jury were to accept Blalock's
version of the facts, there can be no recovery because his involvement
with the dissolution of the partnership was at Blalock's invitation and
because his only involvement came after the partnership was dis-
solved. In support of the first of those contentions, Wilensky pointed
to Blalock's testimony that he suggested to Arford, when Blalock and
Arford were discussing the amount it would take for one of them to
buy out the other's interest in the partnership, that Arford discuss

the matter with Wilensky. Citing *A. L. Williams &c. v. Faircloth*, 259 Ga. 767 (2) (386 SE2d 151) (1989), Wilensky argues that his conduct pursuant to Blalock's invitation "cannot be 'interference' of any kind, tortious or otherwise." Id. at 769. We do not find support for Wilensky's position in either the testimony or the authority he cites. What Blalock testified he suggested to Arford was that Arford talk to Wilensky about raising the money to buy Blalock's share. There is nothing in the record to suggest that Blalock invited Wilensky to join generally in the negotiations which were leading to a dissolution of the partnership, and the limited suggestion Blalock made fell far short of the absolute right conferred by contract on the defendant in *A. L. Williams &c.*, supra.

The record also fails to support Wilensky's contention regarding the timing of his involvement in the dissolution of the Blalock-Arford partnership. The testimony of Blalock which Wilensky cites on this point shows not that the partnership had already dissolved, as Wilensky claims, but that Blalock and Arford had come to the conclusion that they were going to have to make arrangements in the near future to dissolve the partnership. At the time that Wilensky ordered Blalock out of the building and Arford, at Wilensky's direction, changed the locks, Blalock and Arford had entered into but not concluded negotiations concerning a buy-out price.

We conclude from our review of the record in this case that the jury was properly presented with the issue of Wilensky's interference in the business relation between Blalock and Arford, and that the evidence at trial was sufficient to sustain that cause of action by showing that Wilensky acted to procure Arford's breach of the oral partnership agreement.

## Case No. S91G1034

3. Since the jury's rejection of Arford's defense that there never was a partnership between him and Blalock, Arford has argued that he can have no liability in contract for the termination of the partnership because the relationship was terminable at will. That being so, he argues, the Court of Appeals has invented a new tort called wrongful dissolution of a partnership. Following up on that conclusion, Arford contends that since Blalock sued him in contract, he can have no liability in tort, and the judgment against him must be reversed.

The essential flaw in Arford's reasoning is that he has too sharply narrowed the focus of the inquiry into contractual obligations. According to his approach to this issue, the fact that the oral agreement was terminable at will meant that from the moment that he declared the relation to be ended, he had no further contractual duties which could be breached. We believe that the obligations of partners can

reach beyond that moment and that the jury and the Court of Appeals correctly determined that such was the case in the present matter.

"[L]aws in existence at the time a contract is executed are part of that contract. [Cit.]" *Busbee v. American Assn. of Univ. Professors*, 235 Ga. 752 (2) (221 SE2d 437) (1975). Already in existence at the time the partnership in question here was created was the provision in OCGA § 23-2-58 that partners owe a duty to act in the "utmost good faith" with regard to each other. Therefore, it follows, as the Court of Appeals held in this case, that the partnership agreement here included, as a matter of law, an agreement that Arford and Blalock would act in utmost good faith toward one another. 199 Ga. App. at 437. The Court of Appeals went on to quote at length from the California Supreme Court's decision in *Page v. Page*, 359 P2d 41 (1961), holding that one partner's exercise of the right to terminate the partnership, if done in bad faith for the purpose of appropriating to that partner's benefit the prosperity of the partnership, would be a violation of the partnership agreement and would constitute wrongful dissolution of the partnership. Although the courts of this state are not bound by the decisions of other states, we agree with the Court of Appeals that the reasoning in *Page* is consistent with Georgia law (e.g., OCGA § 23-2-58 and OCGA Chapter 14-8), and we accordingly adopt the reasoning of the Court of Appeals on this issue in this case:

> "Even though a partner has a right to dissolve the partnership, if . . . it is proved that the partner acted in bad faith and violated his fiduciary duties by attempting to appropriate to his own use the . . . prosperity of the partnership without adequate compensation to his co-partner, the dissolution would be wrongful and the partner would be liable as provided by the section of the Uniform Partnership Act defining the rights of partners upon wrongful dissolution for violation of the implied agreement not to exclude the other partner wrongfully from the partnership business opportunity." [Cit.] [199 Ga. App. at 438.]

Under the reasoning set out above and the facts in this case, Arford cannot place reliance on this court's holding in *Automatic Sprinkler Corp. v. Anderson*, 243 Ga. 867, 868 (257 SE2d 283) (1979):

> There can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do.

While the contract here contained a right for Arford to terminate it at will, it did not expressly give him the right, in the course of that ter-

mination, to keep for himself all the assets and business opportunities of the partnership. A review of the testimony at trial would authorize the jury to believe that Arford physically excluded Blalock from the partnership's place of business and kept for himself all the partnership's material assets and continuing income from its mortgage origination business, that Arford's conduct was a breach of the implied duty of good faith in the oral partnership agreement, and that the breach of that agreement caused Blalock damages. We agree, therefore, with the Court of Appeals that the trial court was correct in denying Arford's motion for judgment notwithstanding the verdict.

Having considered both of the issues for which the writ of certiorari was issued in these cases, we find the evidence at trial to have been sufficient to sustain the causes of action against both appellants. The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed in Case No. S91G1033. Clarke, C. J., Bell, Hunt, Fletcher, JJ., and Judge William J. Neville concur; Weltner, P. J., dissents.*

*Judgment affirmed in Case No. S91G1034. Clarke, C. J., Weltner, P. J., Bell, Hunt, Fletcher, JJ., and Judge William J. Neville concur.*

DECIDED FEBRUARY 19, 1992 —
RECONSIDERATION DENIED MARCH 26, 1992.

*Gingold, Kaufman & Chaiken, Robert J. Kaufman, Fredric Chaiken, Alston & Bird, G. Conley Ingram,* for appellant (case no. S91G1033).

*Chilivis & Grindler, Gary G. Grindler, Daniel P. Griffin, John K. Larkins, Jr.,* for appellant (case no. S91G1034).

*Decker & Hallman, Richard P. Decker, Peter V. Hasbrouck,* for appellee.

*Glenville Haldi,* amicus curiae.