In the Matter of Betty Jean HUNT, d/b/a Hunt Trucking Company, Debtor.

J. Coleman TIDWELL, Trustee, Plaintiff,

v.

CENTRAL SAVINGS BANK, F.S.B., Defendant.

Bankruptcy No. 91–53882.

Adv. P. No. 92–5062.

United States Bankruptcy Court, M.D. Georgia. Macon Division.

June 9, 1993.

Wesley J. Boyer, Macon, GA, for plaintiff.

Timothy O. Davis, Albany, GA, for defendant.

ROBERT F. HERSHNER, Jr., Chief Judge.

## STATEMENT OF THE CASE

Betty Jean Hunt, Debtor, filed a petition under Chapter 7 of the Bankruptcy Code on October 31, 1991. J. Coleman Tidwell, Chapter 7 Trustee, Plaintiff, filed a "Complaint to Avoid Transfers of Property" on June 30, 1992. Central Savings Bank, F.S.B., Defendant, filed its response on July 30, 1992. A trial was held on November 2, 1992. The Court, having considered the evidence presented and the arguments and briefs of counsel, now publishes this memorandum opinion.

## FINDINGS OF FACT

James G. Hunt owned a business known as James G. Hunt Trucking Company, Inc. (hereafter the "corporation"). The corporation was in the trucking business. The corporation owned three acres of land. Located on the land were two buildings, which were used as a shop and for storage. The Court will refer to the land and the buildings as the "real property." Mr. Hunt died in 1981. His widow is Betty Jean Hunt, the Debtor in this bankruptcy case.

Debtor became the president and sole shareholder of the corporation after the death of her husband. In October of 1986, the corporation obtained a loan from Cordele Banking Company. The real property was pledged as security for the loan. The corporation later pledged the real property to Defendant as security for a loan. Thus, Cordele Banking Company held a first lien, and Defendant held a second lien.

Alvis Lamar Anderson owned several trucks and trailers (hereinafter "trucks"), which he used to haul goods for the corporation. He was an "owner-operator." He was not a shareholder or officer of the corporation.

Debtor, as an individual and as president of the corporation, executed a number of promissory notes in favor of Defendant. Mr. Anderson cosigned or guaranteed some of these promissory notes. Mr. Anderson also executed a number of promissory notes in favor of Defendant. Debtor and the corporation guaranteed some of Mr. Anderson's promissory notes. The debts owed to Defendant were secured by trucks, equipment, and the real property. Some

debts were secured by jewelry that Debtor owned.

Robert Evans has been president and chief executive officer of Defendant since the bank began operations in January of 1986. He owns about one percent of the stock in the bank. Mr. Evans is married to Debtor's niece.

Mr. Evans advised Debtor as to the corporation's financial problems. Mr. Evans, Debtor, and Mr. Anderson met with Ward Stone, attorney at law, sometime prior to Thanksgiving in 1989. The purpose of the meeting was to determine how to deal with the corporation's financial problems. No decision was made regarding a definite course of action.

Sometime later, it was decided that the corporation should file a Chapter 11 bankruptcy case. The corporation filed its Chapter 11 bankruptcy case on February 26, 1990. Defendant was a "friendly creditor" during the corporation's bankruptcy case.

In June of 1990, Cordele Banking Company assigned its security interest in the real property to Defendant. Cordele Banking Company also assigned to Defendant the proof of claim in the amount of $170,208.15, which it had filed in the corporation's bankruptcy case.

As a result of negotiations in which Defendant participated, Debtor and Mr. Anderson agreed to form a partnership to operate the trucking business. The partnership was to be known as Hunt Trucking Company. Mr. Evans advised Debtor that the corporation should allow certain trucks to be repossessed by creditors. The remaining assets of the corporation were to be conveyed to Debtor. Mr. Anderson owned a number of trucks that were to be used by the partnership. He was to contribute $55,000 in cash to the partnership. Debtor and Mr. Anderson were to own, as individuals, the assets that were to be used by the partnership. The value of the assets Debtor contributed to the partnership was $205,000. Mr. Anderson's contributions were worth $169,000.

Defendant agreed to renew the loans that had been made to Debtor, the corporation, and Mr. Anderson. Defendant's representatives talked with the corporation's bankruptcy attorney concerning preparation and execution of the loan documents. Defendant wanted to be very careful that the loan transaction was properly handled.

The loan closing was scheduled for January 31, 1991. Mr. Anderson was unable to attend, and the closing was rescheduled and held on February 8, 1991.[1] The loan documents had been prepared in anticipation of the January 31 closing. The same documents were used for the February 8 closing. Thus, the loan documents reflect a date of January 31, 1991, even though they were not executed until February 8, 1991.

Mr. Evans advised Debtor that the partnership agreement with Mr. Anderson should be reduced to writing. Debtor and Mr. Anderson signed the partnership agreement on February 8, 1991. They were equal partners.

A number of loans owed to Defendant by Debtor, the corporation, and Mr. Anderson were renewed. The principal, late charges, and interest on these loans totaled $448,661.29. In addition, the corporation was indebted to Defendant for $75,000 in check overdrafts. These debts were rolled over into a new promissory note in the amount of $524,075.[2] No new funds were advanced. The borrower was "Alvis Lamar Anderson and Betty Jean Hunt, a Partnership DBA Hunt Trucking Co." The promissory note was executed by Debtor and Mr. Anderson as individuals and as representatives of "Alvis Lamar Anderson and Betty Jean Hunt, a Partnership DBA Hunt Trucking Co." Debtor and Mr. Anderson also executed personal guarantees of the obligations of "Alvis Lamar Anderson and Betty Jean Hunt, a partnership, DBA Hunt Trucking Co." The debt was to be paid by making monthly payments of $8,500. The

---

1. This date may have been February 6, 1991. This difference does not affect the Court's decision.

2. The new obligation included charges for appraisal fees and other costs.

first payment was due on March 15, 1991. A balloon payment was to be made on February 15, 1993.

The corporation held title to the real property, subject to Defendant's lien. Defendant executed a warranty deed dated January 31, 1991, conveying the real property to Debtor. The consideration was $80,000. Debtor executed a deed to secure debt dated January 31, 1991, in favor of Defendant. The deed to secure debt was executed on February 8, 1991. The consideration was the renewal loan in the amount of $524,075. Debtor testified that the notary public, Tracy Black, was not present when the deed to secure debt was executed. Ms. Black and other witnesses testified that Ms. Black was present. The Court, having considered the testimony and the demeanor of the witnesses, is persuaded that Ms. Black was present and that the deed to secure debt was properly attested.

Defendant had started foreclosure proceedings in January of 1991 against the corporation's real property. Defendant planned to foreclose on the first Tuesday in February of 1991. This date would have been February 5, 1991. The newspaper failed to properly advertise the foreclosure. The foreclosure was re-advertised during February of 1991. Defendant "bid in" the real property at the foreclosure sale on March 5, 1991. The bid amount was $80,-000.

Defendant, as attorney in fact for the corporation, executed a Deed Under Power of Sale dated March 5, 1991. The deed under power of sale was recorded on March 19, 1991. Defendant held the warranty deed and the deed to secure debt from Debtor until these deeds were sent to the county courthouse for recording. The deed to secure debt was recorded on April 17, 1991. The warranty deed was recorded on April 19, 1991.

Debtor and Mr. Anderson executed a Security Agreement dated January 31, 1991, in favor of Defendant. They signed as individuals and as representatives of Hunt Trucking Company. The Security Agreement gave Defendant a security interest in all inventory, equipment, accounts, trucks, the real property, certain real property owned by Mr. Anderson, and certain jewelry owned by Debtor.

The corporation held title to several trucks. Defendant held a security interest in the trucks. Debtor, as president of the corporation, conveyed the trucks to herself and gave Defendant a security interest in the trucks. This transaction was part of the loan closing on February 8, 1991.

Defendant filed a financing statement on Debtor's trucks on March 25, 1991. The Georgia Department of Motor Vehicles issued certificates of title on April 12, 17, and 25, 1991. The certificates of title show Debtor as the owner and Defendant as first lienholder. The evidence does not show when the applications for certificates of title were received by the Department of Motor Vehicles.

Debtor had pledged her jewelry to Defendant as collateral for a prior loan at least as early as March of 1990. Defendant had filed a financing statement on the jewelry. This financing statement was not introduced into evidence. The jewelry was appraised on March 30, 1990, as having a value of $29,100.[3] Debtor, in her bankruptcy petition, scheduled the jewelry as having a value of $10,900. The Court is persuaded that the jewelry was worth $29,100. Debtor had possession of the jewelry when the loan closed on February 8, 1991. In March of 1991, Defendant instructed Debtor to bring the jewelry to the bank. Defendant filed a financing statement on Debtor's jewelry on March 25, 1991.

The partnership began making monthly payments of $8,500 to Defendant in March of 1991. Four payments were made between March and July of 1991. The partnership made its last payment to Defendant on August 27, 1991. Debtor's obligations exceeded her assets during the time relevant to this decision. That is, she was insolvent.[4]

---

**3.** The appraisal was by Russell A. Jones Jewelers.

**4.** *See* 11 U.S.C.A. § 101(32)(A) (West 1993).

The partnership had financial problems. Debtor filed an individual petition under Chapter 7 of the Bankruptcy Code on October 31, 1991. The petition was filed in the name of "Betty Jean Hunt, a partner of Hunt Trucking Company."

Plaintiff testified that Debtor's bankruptcy estate has no funds for distribution to unsecured creditors. He is not aware of any other cause of action that could generate funds for unsecured creditors.

### CONCLUSIONS OF LAW

In this bankruptcy case, Debtor filed an individual petition under Chapter 7 of the Bankruptcy Code. The partnership known as Hunt Trucking Company did not file a bankruptcy petition. "For bankruptcy purposes, a partnership is generally recognized as a separate and distinct entity from its partners. *Liberty Nat. Bank v. Bear,* 276 U.S. 215, 220–21, 48 S.Ct. 252, 253–54, 72 L.Ed. 536 (1928)." *E.A. Martin Machinery Co. v. Williams (In re Newman),* 875 F.2d 668, 670 (8th Cir.1989).

■ Debtor executed a deed to secure debt in favor of Defendant. The deed to secure debt was filed for record before Debtor filed her bankruptcy case. In Count I of the complaint, Plaintiff contends the recording was not valid and did not give constructive notice. Plaintiff contends the notary public was not present when the deed to secure debt was executed by Debtor. Plaintiff contends his interest in the real property is superior to the interest of Defendant.[5] This Court is persuaded that the notary public was present and that the deed to secure debt was properly attested. *See* O.C.G.A. §§ 44–14–33 and –61 (1982). The Court, therefore, holds that Plaintiff may not recover under Count I of the complaint.

■ In Counts II and III of the complaint, Plaintiff seeks to avoid the perfection of Defendant's liens on Debtor's real property and personal property. Plaintiff

and Defendant agree that the liens were perfected more than ninety days, but less than one year, prior to the filing of Debtor's bankruptcy case. Plaintiff contends the liens may be avoided as preferential transfers[6] under section 547(b) of the Bankruptcy Code,[7] which provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 1979 & Supp. 1993).

Plaintiff has the burden of proving the avoidability of a transfer under section 547(b). 11 U.S.C.A. § 547(g) (West 1993).

The Court is persuaded from the facts that Debtor was insolvent when the liens were perfected. Thus, the third element of a preferential transfer has been satisfied.

"Under 11 U.S.C. § 101(50), the creation of a lien in favor of a previously unsecured creditor is a transfer for purposes of Section 547." *Grant v. Kaufman (In re Ha-*

---

**5.** *See* 11 U.S.C.A. § 544(a) (West 1993).

**6.** Perfection of a lien is a transfer for purposes of section 547(b). *Askin Marine Co. v. Conner*

*(In re Conner)*, 733 F.2d 1560, 1562 (11th Cir. 1984); 11 U.S.C.A. § 547(e) (West 1993).

**7.** 11 U.S.C.A. § 547(b) (West 1979 & Supp.1993).

gen ), 922 F.2d 742, 745 (11th Cir.1991). Because Defendant's liens were perfected more than ninety days, but less than one year, before Debtor filed her bankruptcy case, Plaintiff must show that the creditors that benefited from the transfers were insiders.

Debtor filed a bankruptcy case as an individual. Section 101(31)(A) of the Bankruptcy Code [8] provides:

(31) "insider" includes—

(A) if the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control;

11 U.S.C.A. § 101(31)(A) (West Supp.1992).

■■■ Mr. Evans is an insider because he is a "relative of the debtor." [9] Hunt Trucking Company is a "partnership in which the debtor is a general partner." Mr. Anderson is a "general partner of the debtor." Thus, Mr. Evans, Mr. Anderson, and Hunt Trucking Company are insiders.

■ Plaintiff contends "[b]ecause Mr. Evans is the president of Defendant and holds a position of influence with the Defendant, his insider status is imputed to the Bank." Plaintiff relies upon this Court's decision in *Tidwell v. AmSouth Bank, N.A. (In re Cavalier Homes of Georgia, Inc.)*,[10] in which this Court stated:

For purposes of the Bankruptcy Code, an insider is an entity or person with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *Lingley v. Stuart Shaines, Inc. (In re Acme–Bunham, Inc.)*, 50 B.R. 734, 739

(D.C.Me.1985) (quoting S.Rep. No. 95–989, 95th Cong.2nd Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5810). The determination of insider status is a question of fact which must be decided on a case-by-case basis. *See Lingley* at 739. Plaintiff contends that AmSouth Bank was an insider because of its intimate involvement with the finances of Debtor....

Plaintiff has not shown that AmSouth Bank exercised any managerial control over Debtor or required that Debtor obtain its advice or consent before exercising managerial decisions. Debtor was not required to obtain prior approval from AmSouth Bank for decisions made in the ordinary course of business.

The exercise of financial control of a creditor over a debtor incident to a creditor-debtor relationship does not make the creditor an insider even though a creditor may obtain some concessions from the debtor based on the relationship. The debtor could find another lending institution, pay off the loan and terminate the relationship at any time. *See Markowitz v. Heritage Bank, N.A. (In re Jefferson Mortgage Co.)*, 25 B.R. 963, 970 (Bankr. D.N.J.1982); *See also Schick Oil & Gas, Inc. v. Federal Deposit Insurance Corp. (In re Schick Oil & Gas, Inc.)*, 35 B.R. 282, 285–86 (Bankr.W.D.Okla.1983).

102 B.R. at 883–84.

In *Burner v. Security State Bank (In re Burner)*,[11] the debtor, an individual, alleged that the bank had received insider preferences. The deceased husband of the debtor and the president of the bank were close associates. The bankruptcy court stated:

The Debtor maintains that the Bank acted as an insider through [its president's] conduct as bank officer and exec-

---

8. 11 U.S.C.A. § 101(31)(A) (West 1993).

9. 11 U.S.C.A. § 101(45) (West 1993). This section provides:

(45) "relative" means individual related by affinity or consanguinity within the third degree as determined by the common law, or

individual in a step or adoptive relationship within such third degree;

11 U.S.C.A. § 101(45) (West 1993).

10. 102 B.R. 878 (Bankr.M.D.Ga.1989).

11. 109 B.R. 216 (Bankr.W.D.Texas 1989).

utor of [her deceased husband's] estate....

Cases which have recently dealt with the concept and application of "insider" beyond its statutory roots have focused upon the amount of control exercised by the alleged "insider." Simply stated, the relationship between a bank and its borrower is that of creditor and debtor. Consequently, cases examining this relationship have routinely held that a bank's financial power over its borrower is insufficient, standing alone, to render the bank an insider. *Huizar* [*v. Bank of Robstown (In re Huizar)*, 71 B.R. 826,] at 831.[ (Bankr.W.D.Tex.1987) ]. Moreover, the control element necessary to qualify a bank as an insider must be such that the debtor was the mere alter ego or instrumentality of the bank, in that the bank was exercising such control and influence over the debtor that their transactions were not at arm's length. As a result, there must be credible evidence presented to demonstrate that the bank held some form of unreasonable control over the debtor.

The Debtor argues that the unreasonable control exercised by the Bank is a combination of three factors: (1) the Bank officer's close personal relationship with the Burners; (2) the Bank's domination over Mrs. Burner as her principal lender; and (3) the improper use of authority exercised by Mr. Montgomery as co-executor of Jess Burner's estate....

First, the fact that the Debtor and an officer of the Bank have a close personal relationship is an insufficient basis to constitute a finding of an insider. *Toledo Trust Co. v. Peoples Banking Co. (In re Hartley)*, 52 B.R. 679 (Bankr. N.D.Ohio 1985). Aside from this basis, there is nothing to suggest that the Bank acted as an insider.

Second, it is difficult to assess the Bank's "dominance" over the Burners. Generally, the relationship between a debtor and a creditor is an arm's length transaction, even though the creditor may have exercised some measure of financial control over the debtor to protect its collateral. *Markowitz v. Heritage Bank, N.A. (In re Jefferson Mortgage Co.)*, 25 B.R. 963, 970 (Bankr.D.N.J. 1982). Such control is incidental to the debtor-creditor relationship. *See also Hartley, supra* at 690; *In re Belco, Inc.*, 38 B.R. 525, 529 (Bankr.W.D.Okla.1984). Further, the mere fact that a bank president and a debtor have a close personal relationship does not require a finding of insider status where all of the documents were prepared and executed on the advice of counsel.

109 B.R. at 226–27.

Plaintiff has not shown that Defendant exercised the control over Debtor discussed in *In re Cavalier Homes of Georgia, Inc.* and *In re Burner.* The Court is not persuaded that Defendant was an insider. Thus, only Mr. Evans, Mr. Anderson, and the partnership were insiders.

■ Plaintiff does not contend that Mr. Evans was a creditor of Debtor. There is no evidence that he holds a claim against Debtor's bankruptcy estate. Mr. Anderson, the partnership, and Debtor executed a promissory note in favor of Defendant. The partnership signed as a "maker," and Mr. Anderson and Debtor signed either as makers or as endorsers. Mr. Anderson holds a contingent claim for contribution against Debtor. The partnership would hold a contingent claim if Debtor signed as a comaker rather than as an endorser. Thus, Mr. Anderson is an insider and a creditor. The partnership is an insider and may be a creditor. Under section 547(b)(1), Plaintiff must show that Mr. Anderson or the partnership benefited from perfection of Defendant's liens. The effect of the perfection was to provide partial security for Debtor's obligation to Defendant.

In *In re Erin Food Services, Inc.*,[12] the First Circuit Court of Appeals stated:

Unless the creditor for whose "benefit" the transfer was made, *see* 11 U.S.C. § 547(b)(1), realized some *quantifiable monetary advantage* from the debtor's

---

**12.** 980 F.2d 792 (1st Cir.1992).

transfer, there would be no practicable method for determining whether "such creditor ... receive[d] more than such creditor would receive" in the event of a chapter 7 liquidation, 11 U.S.C. § 547(b)(5). Thus, interpreting all its parts harmoniously, as we must, we believe section 547(b) plainly mandates that the "benefit" inquiry under section 547(b)(1) be confined, as in *Deprizio* and every other trilateral preference case, *see supra* notes 10–12 and accompanying text (and cases cited therein), to transfers of the debtor's property which are shown to have resulted in a quantifiable monetary reduction in the insider-creditor's contingent claim against the debtor's chapter 7 estate to the detriment of other creditors of the same class.

980 F.2d at 800–01 (emphasis in original).

In the case at bar, perfection of Defendant's liens did not reduce the obligations of Mr. Anderson or the partnership under the terms of the promissory note. They were obligated to pay $524,075 both before and after the perfection. Defendant may chose to foreclose on the liens before collecting from Mr. Anderson and the partnership. But "there is no hint in the [Bankruptcy] Code, its legislative history, or in pre-Code law that Congress ever considered, let alone intended, that the term 'benefit' might encompass such incorporeal ephemera as 'buying time'." In *In re Erin Food Services, Inc.*, 980 F.2d at 799.

The Court is not persuaded that Plaintiff has carried his burden of showing that Mr. Anderson or the partnership received a benefit from the transfers, which occurred between ninety days and one year before the filing of Debtor's bankruptcy petition. The Court, therefore, must deny Plaintiff the relief requested under Counts II and III of the complaint.

In Counts IV and V of the complaint, Plaintiff seeks to recover certain payments made to Defendant under the promissory note executed on February 8, 1991. Debtor and Mr. Anderson operated their trucking business as a partnership. From the evidence presented, the Court can only conclude that the payments at issue were made by the partnership. Plaintiff has not proven that Debtor's funds were used to make these payments. Thus, Plaintiff is not entitled to recover, for the benefit of Debtor's bankruptcy estate, the payments made to Defendant.

In *E.A. Martin Machinery Co. v. Williams (In re Newman)*,[13] the Eighth Circuit Court of Appeals stated:

The most basic requirement of 11 U.S.C. § 549(a) is a "transfer of property of the estate." A bankruptcy estate is comprised of all the debtor's legal or equitable interests in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). For bankruptcy purposes, a partnership is generally recognized as a separate and distinct entity from its partners. *Liberty Nat. Bank v. Bear*, 276 U.S. 215, 220–21, 48 S.Ct. 252, 253–54, 72 L.Ed. 536 (1928); *In re Aboussie Bros. Constr. Co.*, 8 B.R. 302, 303 (E.D.Mo. 1981). "Where the debtor is a member of a partnership, the debtor's interest in the partnership is included in the estate. However, assets held by the partnership itself are not included in the estate * * *." 8A C.J.S. *Bankruptcy* § 118 (1988) (footnotes omitted); *see also In re Dreske*, 25 B.R. 268, 271 (Bankr.E.D.Wis. 1982). The nature and extent of the partnership interest is determined by state law. *In re Wallen*, 43 B.R. 408, 409 (Bankr.D.Idaho 1984).

Under Missouri law, a partnership bestows rights upon its partners in specific partnership property, such rights being in the nature of a tenancy in partnership. Mo.Rev.Stat. § 358.250.1. "All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership is partnership property." *Id.* § 358.080.1. Moreover, "[a] partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership." *Id.* § 358.250.2(3).

Applying these principles to the case at bar, we conclude that because the trans-

---

**13.**   875 F.2d 668 (8th Cir.1989).

fer which the trustee sought to avoid involved partnership property in which the debtor had no interest aside from his right to demand his individual partner's share, there was no transfer of the debtor's estate. Therefore, the trustee may not avoid the transaction under 11 U.S.C. § 549(a), or recover the property under 11 U.S.C. § 550(a)(1). *Cf. In re Caudy Custom Builders, Inc.*, 31 B.R. 6, 9 (Bankr.D.S.C.1983) (though debtor held legal title trustee could not avoid mortgage of partnership property under 11 U.S.C. § 547(b), as there was no transfer of "property of the debtor"; trustee's only interest in partnership property was right to demand partner's share after an accounting and payment of partnership liabilities).

875 F.2d at 670.

■ Under Georgia law, "A partner's interest in the partnership is his share of the profits and surplus, and the same is person-

al property." O.C.G.A. § 14–8–26 (1989). "Profits, of course, means net, not gross, income." *Arford v. Blalock*, 199 Ga.App. 434, 405 S.E.2d 698, 703 (1991), *aff'd*, 262 Ga. 95, 414 S.E.2d 1 (1992).

The partnership was indebted to Defendant in the amount of $524,030. The Court is persuaded that the partnership had no "profits and surplus."

The Court is persuaded that Plaintiff may not recover on Counts IV and V of the complaint.

An order in accordance with this memorandum opinion will be entered this date.

