T.C. Memo. 2000-344


UNITED STATES TAX COURT


RICHARD D. ANDERSON AND MARY L. ANDERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13327-97.                    Filed November 8, 2000.


<u>Robert H. Hishon</u>, for petitioners.

<u>Roslyn D. Grand</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined income tax deficiencies of $30,747 and $18,940 for petitioners' 1993 and 1994 tax years, respectively.  The issue for our consideration is whether amounts received by petitioners in connection with an

action for tortious interference with business relations are excludable from petitioners' income under section 104(a)(2).[1]

## FINDINGS OF FACT[2]

Petitioners resided in Chamblee, Georgia, when their petition was filed. Richard D. Anderson was a director, officer, shareholder, and employee of ARRE Industries, Inc., d/b/a Carrera Shocks (Carrera). Mary Anderson was an officer and employee of ARRE Industries, Inc.

Carrera Shocks

In 1964, Mr. Anderson started a highly specialized business to research, develop, and manufacture high performance suspension component parts for race cars. In particular, he designed shock absorbers. Mr. Anderson held three patents related to shock absorbers. Carrera's main customers were distributors of racing equipment who in turn would sell the shock absorbers to auto racing teams. Mr. Anderson's familiarity with auto racing permitted him access to the pit crews and provided him with the opportunity to perform consultations regarding the most efficient use of Carrera shock absorbers. While attending approximately 100 races per year

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2] The stipulation of facts and the attached exhibits are incorporated herein by this reference.

over a period of 16 years, petitioner developed a good working rapport with various race teams. Mr. Anderson used his accumulated knowledge of shock absorbers as a marketing tool to curry favor with race teams by providing his consulting services free of charge. The main thrust of Carrera's business was the sale of shock absorbers.

Carrera Employees

In the late 1970's Mr. Anderson hired George Gillespie (Gillespie) to head Carrera's technical department as its director of racing. Gillespie worked first as Mr. Anderson's consulting assistant and then as Carrera's primary racing consultant.

Timothy Whitehead (Whitehead) began working for Carrera shortly after Gillespie was hired. Whitehead was responsible for all of Carrera's administrative functions, including accounts payable, accounts receivable, and payroll operations. Both Whitehead and Gillespie had worked for Carrera for more than 3 years when Mr. Anderson learned of their plans to leave Carrera. It was not until after they left Carrera that Mr. Anderson became aware of the damage Whitehead and Gillespie had done to his business. In December 1982, while still working for Carrera, Whitehead and Gillespie conspired to enter into business for themselves. Using information they acquired while working for Carrera, Gillespie and Whitehead designed a shock

absorber for use in the auto racing industry.  On January 10, 1983, they formed Pro-Formance, Inc., (Pro-Formance).

Seeking to obtain their own share of the racing market, Whitehead and Gillespie contacted Carrera's customers, suppliers, manufacturers, and company-sponsored race teams. They used Carrera's mailing list to solicit and obtain financing from Carrera's key customers and manufacturers.  They misled Carrera-sponsored race teams by telling them that Carrera would no longer offer shock absorbers free of charge for sponsorship purposes.  On at least one occasion, Gillespie falsely conveyed the idea that Carrera had discontinued manufacturing the type of shock absorber which had given Carrera its renown.  Whitehead made false statements regarding Mr. Anderson's handling of Carrera's finances.  He told Carrera's creditors that Mr. Anderson was doctoring the company's accounts receivable in order to increase Carrera's line of credit.  On other occasions Whitehead and Gillespie told Carrera customers that Mr. Anderson was apathetic towards the company's future as a going concern, that he was unwilling to provide Carrera's customers with the same personal service as he had in the past, and that he was embezzling money from an industry trade show.

The Lawsuit

On December 15, 1983, Carrera, through Mr. Anderson, filed a complaint against Pro-Formance; Whitehead; and Gillespie (defendants) in the Superior Court of Dekalb County, Georgia. In the complaint, Carrera alleged tortious interference with business relations, breach of a fiduciary duty, and defamation. The defendants answered, counterclaimed, and interpleaded the Andersons in their individual capacity.

The Andersons answered and counterclaimed alleging two separate counterclaims against the defendants: (1) That defendants caused "injury to * * * [Mr. Anderson's] economic well-being, peace of mind and business reputation", and (2) that defendants caused "great injury to * * * [Mr. Anderson's] peace, happiness and feelings." Pursuant to a consolidated pretrial order, which was drafted by Mr. Anderson's attorney, the court issued verdict pro forma to the jury as follows: "As to count 1 of Richard D. Anderson's counterclaim against Pro-Formance Shocks, Inc., Timothy M. Whitehead and George T. Gillespie for alleged intentional injury as a result of alleged tortious interference with plaintiff's business relationships, we the jury find"; and "As to count 2 of Richard D. Anderson's counterclaim against Pro-Formance Shocks, Inc., Timothy M. Whitehead and George T. Gillespie for alleged slander, we the jury find".

On April 8, 1988, the jury returned verdicts in favor of Mr. Anderson, awarding him $2.5 million for tortious interference with business relationships, to be paid equally by the defendants, and $1 for slander. In addition, the jury returned a favorable verdict for Carrera on all three of its claims in the original lawsuit. The jury awarded $3.7 million to Carrera for tortious interference with its business relationships and $1 for slander, to be paid equally by the defendants, and $100,000 for breach of a fiduciary duty, to be paid in equal shares by Whitehead and Gillespie. A judgment was entered to reflect the foregoing.

The defendants moved for a judgment notwithstanding the verdict or in the alternative for a new trial. The court granted the defendants' motion for new trial as to damages only. Ultimately, by means of a stipulation and consent order, the court reduced the award for Mr. Anderson's claim for interference with his business relationships from $2.5 million to $210,000, to be paid in equal shares by each defendant. The court did not disturb Mr. Anderson's $1 award for slander. In addition, the court reduced the amount awarded for Carrera's claim for tortious interference with business relationships from $3.7 million to $300,000, but it did not disturb Carrera's awards for breach of a fiduciary duty or for slander.

The defendants were unable to pay the judgment and separately filed voluntary petitions for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code. On July 12, 1989, the parties, after considering the bankruptcies and the financial condition of the defendants, entered into a settlement agreement under which Carrera received a lump sum payment of $331,250. Also, defendants issued a promissory note to Mr. Anderson and Carrera in the amount of $325,000 to be paid over 5 years along with 10.75-percent interest. As part of the settlement agreement Mr. Anderson and Carrera were to be paid periodically over 60 months with a stipulation that Carrera would receive payments until its proportionate share of the damages, as determined by the original verdict, was satisfied in full.

During the 1993 tax year petitioners received monthly payments totaling $74,857. Petitioners did not include the payments in their 1993 income tax; however, they submitted a disclosure statement maintaining that the amount received was on account of personal injuries and therefore excludable under section 104(a)(2).

During the 1994 tax year petitioners received monthly payments totaling $47,464. Petitioners did not include the payments in their 1994 income tax; however, they submitted a disclosure statement maintaining that the amount received was

on account of personal injuries and therefore excludable under section 104(a)(2).

On April 10, 1997, respondent mailed petitioners a statutory notice of deficiency, determining that the payments were includable in income for the respective tax years.

OPINION

The issue for our consideration in this case requires an analysis of whether the payments received fit within the statutory exclusion provided for in section 104(a)(2). Except as otherwise specifically provided, gross income includes a taxpayer's income from whatever source derived. See sec. 61(a); see also Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). Section 61(a) is broadly construed, whereas specific exclusions from gross income must be narrowly construed. See Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995). For 1993 and 1994, section 104(a)(2) specifically excluded from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Section 1.104-1(c), Income Tax Regs., provides that "damages received" is an amount received (other than workmen's compensation) through prosecution of an action based upon tort or tort-type rights.

The Supreme Court has held that taxpayers may exclude

damages received if the underlying cause of action giving rise to the recovery is based upon tort or tort type rights and the damages are received on account of personal injuries or sickness. See Commissioner v. Schleier, supra at 336-337. Respondent concedes that Mr. Anderson's claims sounded in tort, thus satisfying the first prong of the Schleier test. Therefore, we focus on the second prong of the test, which requires petitioners to show that the damages received were on account of personal injuries or sickness.

When damages are received pursuant to a suit or settlement agreement, the nature of the underlying claim determines whether such damages are excludable under section 104(a)(2). See United States v. Burke, 504 U.S. 229, 239 (1992); see also Metzger v. Commissioner, 88 T.C. 834, 847 (1987). For the taxable years under consideration, personal injuries included both physical and nonphysical injuries. See Commissioner v. Schleier, supra at 329 n.4.

Petitioners argue that the damages they received for tortious interference with business relationships were on account of an injury to Mr. Anderson's business reputation, a personal injury, and, therefore, are excludable under section 104(a)(2).

The law is well settled that the tax consequences of an award for damages depend upon the nature of the litigation and

on the origin and character of the claims adjudicated, and not upon the validity of those claims. See <u>Bent v. Commissioner</u>, 87 T.C. 236 (1986), affd. 835 F.2d 67 (3d Cir. 1987); <u>Glynn v. Commissioner</u>, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982); <u>Seay v. Commissioner</u>, 58 T.C. 32, 37 (1972). In this case, most of the amounts petitioners received was for tortious interference with Mr. Anderson's business relationships and only a nominal amount was received for slander. Both of Mr. Anderson's claims of action existed under Georgia law.

In Georgia, tortious interference with business relationships requires the plaintiff to show that the defendant: (1) Acted improperly and without privilege, (2) acted purposely and with malice with intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused the plaintiff financial injury. See <u>Renden, Inc. v. Liberty Real Estate, Ltd.</u>, 444 S.E.2d 814 (Ga. Ct. App. 1994).

Respondent determined that the damages received by Mr. Anderson for interference with his business relationships were awarded on account of economic injuries, rather than personal injuries. Supporting respondent's determination, under Georgia law a person's business is property in the pursuit of which he is entitled to protection. See <u>NAACP v. Overstreet</u>, 142 S.E.2d

816 (Ga. 1965).  Tortious interference with business relations involves interference with the plaintiff's current and future property rights derived from current or potential customers. See id. at 823; see also Renden, Inc. v. Liberty Real Estate, Ltd., supra at 817.  Petitioners have not shown that the damages received were for personal injury under Georgia law. Damages received in a tort action may be excluded from income only when received on account of personal injury; therefore, petitioners' damages received for tortious interference with business relationships must be included in income.  Even if the holding in NAACP v. Overstreet, supra, was not intended to limit tortious interference with business relationships to a property tort, petitioners have still failed to prove that they received damages on account of personal injury.  Accordingly, we sustain respondent's determination on this issue.

Petitioners argue that the personal injury to Mr. Anderson's business reputation constituted the requisite "improper means" element of the tortious interference claim. Georgia courts have held that in order to satisfy all the elements in a claim for tortious interference with business relationships, there must be a finding that the defendant used improper means.  See Contractors' Bldg. Supply, Inc. v. Gwinnett, 403 S.E.2d 844 (Ga. Ct. App. 1991).  "Improper means" may be shown in several ways including:  Fraud,

misrepresentation, breach of a fiduciary duty, unauthorized use of confidential information, defamation, and unwarranted criminal prosecutions. See id. at 846; see also American Bldg. Co. v. Pascoe Bldg. Sys., Inc., 392 S.E.2d 860 (Ga. Ct. App. 1990); Architectural Manufacturing Co. of Am. v. Airotec, Inc., 166 S.E.2d 744 (Ga. Ct. App. 1969) (misrepresentations as to a company's financial solvency are improper means and may constitute an element of tortious interference). Petitioners would have us assume that out of the evidence submitted to the jury the only "improper means" employed by the defendants, and established at trial, was conduct that injured Mr. Anderson's business reputation. However, the facts in this case do not permit us to make such an assumption.

Although the statements by the defendants may have been slanderous and damaging to Mr. Anderson's business reputation, they constituted but one of several sources from which the jury could have decided the existence of tortious interference with business relationships. At trial, Mr. Anderson introduced copious amounts of evidence in the form of customer lists, invoices, profit/loss statements, tax returns, and witness testimony to show how the defendants' improper conduct contributed to his loss of business and loss of profits. The jury could have concluded from the evidence that the defendants: (1) Perpetrated the unauthorized use of Carrera's

customer mailing list, (2) engaged Carrera's employees to entice them into employment with Pro-Formance, (3) engaged Carrera's suppliers for the purpose of manufacturing a competing product, (4) breached fiduciary duties owed to petitioner and Carrera, or (5) defamed Mr. Anderson and Carrera injuring their respective reputations. Petitioners have failed to show which of these improper acts was considered by the jury to convince it to reach a verdict for Mr. Anderson.[3]

Where the award for damages is rendered by a jury verdict and judgment, and has been clearly allocated to an identifiable claim, we are guided by the nature of the claim as identified under State law personal injury concepts. See Threlkeld v. Commissioner, 87 T.C. 1294, 1305-1306 (1986), affd. 848 F.2d 81 (6th Cir. 1988). We find it most telling that the vast majority of the jury award was for interference with business relationships and only $1 was for slander. Petitioners also argue that their damages were received pursuant to a settlement agreement and are, therefore, entitled to an alternative allocation. The facts do not comport with such a finding.

---

[3] Petitioners have offered Fabry v. Commissioner, 223 F.3d 1261 (11th Cir. 2000), revg. 111 T.C. 305 (1998), for the proposition that injury to business reputation is a personal injury under sec. 104(a)(2). However, as discussed above, petitioners have failed to show that Mr. Anderson's damages received were on account of a personal injury. Instead, the jury decided that the vast majority of Mr. Anderson's injuries occurred to his property and his property rights associated with Carrera.

We cannot accept an allocation based on a settlement agreement which merely facilitated payment in the face of the judgment debtor's bankruptcy. The settlement agreement reduced the monetary amount of the award, but it did not contain any language that would establish an allocation contrary to the jury verdicts or the judgments entered. We note that, in this case, the jury verdict forms were drafted at the close of trial and the language used in the verdict forms came from a pretrial order that was used as a blueprint for the trial. The record reflects that the jury delivered its verdict using language that was identical to language in the pretrial order that was drafted by Mr. Anderson's attorney. Mr. Anderson was, therefore, cognizant of and responsible for the formulation of the claims as they were presented to the jury.

The vast majority of Mr. Anderson's award for damages was received for interference with his business relationships and not for slander. The jury awarded Mr. Anderson $2.5 million (later reduced to $210,000) for the injuries claimed in count one for tortious interference with business relationships, but it awarded only $1 for the injuries claimed in count two for slander. For the foregoing reasons the award must be allocated as it was clearly established at trial.

In sum, petitioners have failed to show that the compensatory damages awarded on Mr. Anderson's claim for

tortious interference with business relationships were received on account of personal injuries within the meaning of section 104(a)(2). Although the facts reflect that the defendants' conduct may have damaged Mr. Anderson's business reputation, the vast majority of the recovery was for property damages caused by interference with Mr. Anderson's business relationships. In Commissioner v. Schleier, 515 U.S. 323 (1995), the Supreme Court cautioned that there must be a direct link between the cause of harm and its effect for the section 104(a)(2) exclusion to apply. Petitioners have failed to show such a link between an injury to Mr. Anderson's business reputation caused by the defendants' actions and the economic loss for which Mr. Anderson recovered. Therefore, petitioners have failed the second prong of the Schleier test with regard to the damages received under Mr. Anderson's claim for tortious interference with business relationships. Accordingly we sustain respondent's determination on this issue.

We must now examine the second claim for which petitioners received damages. In Mr. Anderson's second claim, he alleged that the defendants "intentionally, willfully, and maliciously" acted to cause injury to petitioner's "peace, happiness, and

feelings."  The pretrial order and the jury verdict forms both denominated this claim as slander.

Respondent concedes that the damages awarded for slander constitute an award received for personal injury under section 104(a)(2).  Therefore, the $1 in damages petitioners received for slander is excludable in accord with section 104(a)(2).

Petitioner has raised other arguments that we have considered in reaching our decision.  To the extent that we have not discussed these arguments, we conclude they are without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>